# Exhibit B

MDL00793

**BROWN 25 PRODUCTIONS, INC.**
8641 Warner Drive
Culver City, California 90232

As of July 10, 1993

Mr. Quentin Tarantino
c/o William Morris Agency
151 El Camino Drive
Beverly Hills, California 90212

Re: "PULP FICTION" -- RIGHTS ACQUISITION

Dear Quentin:

The following sets forth the agreement between you and Brown 25 Productions, Inc. ("Producer") with respect to the motion picture project at present entitled "Pulp Fiction" (the "Picture").

1. For good and valuable consideration, the receipt and sufficiency of which you hereby acknowledge, you hereby grant to Producer the exclusive right and option (the "Option") to acquire exclusively, throughout the universe, and in perpetuity, all rights (other than the "Reserved Rights" set forth in Paragraph 2 below and those certain distribution rights in the Picture granted to Miramax Film Corp. ("Miramax") pursuant to the agreement (the "Miramax Agreement"), dated as of June 23, 1993, between, on the one hand, Miramax, and, on the other hand, you and Lawrence Bender) in, to, and underlying the original screenplay written by you entitled "Pulp Fiction" (the "Screenplay") and all of your rights under that certain agreement (the "Avary Agreement"), dated as of April 8, 1992, between you and Roger Avary ("Avary"), as amended by that certain letter amendment (the "Avary Amendment), dated July 9, 1993, between you and Avary, with respect to the screenplay written by Avary entitled "Pandemonium Reigned" (the "Avary Screenplay"), upon which part of the Screenplay is based. Producer shall be entitled to exercise the Option by payment to you of $300,000 (less any purchase price and/or option monies paid to Avary after the date hereof to acquire the Avary Screenplay) at any time on or before October 15, 1993. Notwithstanding the foregoing, the Option shall be deemed exercised (and the sum set forth in the preceding sentence shall be deemed payable) upon the earlier of the funding of a production loan for the financing of the production of the Picture or the commencement of principal photography.

2. The following rights ("Reserved Rights") are reserved by you: soundtrack album, music publishing, live performance, print publication (including, without limitation, screenplay publication, "making of" books, comic books and novelization, in audio and electronic formats as well, as applicable), interactive media, theatrical and television sequel and remake rights, and television series and spinoff rights. Your exercise of certain of the

Reserved Rights shall be subject to restrictions set forth in the Miramax Agreement. You shall have the right to use the title of the Picture in connection with the exploitation of the Reserved Rights. For the purpose of this agreement, "interactive media" shall mean any interactive device or mechanism, such as a computer game based on the Picture, which may include literary or character elements used in the Picture but shall not be a substantial replication or viewing of the Picture. Interactive media rights, if not hereafter acquired by Miramax under the Miramax Agreement, shall be subject to a holdback to be negotiated in good faith between you and Miramax with a particular view to avoiding competition with home video. Producer (and/or distributors of the Picture) may publish for promotional purposes excerpts up to 7,500 words from the Screenplay on a not-for-sale basis.

3. In the event Producer exercises the Option but does not commence principal photography of the Picture on or before October 15, 1993, all rights granted by you hereunder shall automatically revert to you.

4. You represent and warrant that you are the sole owner and author of the Screenplay and the Screenplay is wholly original with you (except for such portions of the Screenplay as may be based on the Avary Screenplay), no other agreements (other than the Miramax Agreement, Avary Agreement, and Avary Amendment) relating to the Screenplay are currently in force and effect, the Screenplay is protected by copyright in all areas of the world affording such protection, no production or other work based on the Screenplay has been authorized or produced in any area of the world, there are no existing liens or encumbrances on or against the Screenplay or any rights therein (subject to the Miramax Agreement), and Producer's exploitation of any or all rights in the Screenplay shall not infringe or violate the copyright interests of any person or entity and/or, to the best of your knowledge, any other rights of any person or entity. The foregoing representations and warranties are subject to the substantive provisions of Article 28 of the WGA Agreement (as if the WGA Agreement applied to this agreement). You hereby agree to save, indemnify, and hold harmless Producer (and its officers, directors, shareholders, employees, successors, licensees, and assigns) from and against any and all actions, causes of actions, liabilities, damages, costs, and expenses (including, without limitation, reasonable attorneys' fees and costs)(collectively "Claims") arising out of or in connection with any breach by you of any warranty, representation, and/or agreement made by you hereunder.

5. Producer hereby agrees to save, indemnify, and hold you harmless from and against any and all Claims arising from any material added to the Screenplay by Producer or any person other than you at Producer's request and/or with respect to any Claims arising out of the development, production, distribution, and/or other exploitation of the Screenplay and/or the Picture (and/or any rights therein), unless such Claim arises out of a breach by you of your representations and warranties under this agreement. Upon

exercising the Option, Producer shall assume all of your executory obligations under the Avary Agreement and Avary Amendment and shall indemnify you and hold you harmless from and against any and all Claims arising out of the Avary Agreement and Avary Amendment. You shall be covered under the errors and omissions and general liability policies for the Picture.

6. Producer shall not have the right to make any changes to the Screenplay without your prior, written approval.

7. You shall receive writing credit on the Picture in the manner set forth in Paragraph 28 of the Miramax Agreement. In addition, although you are not a member of the WGA, you and Avary shall be entitled to receive an amount equal to the WGA residuals you and Avary would have received if you and Avary were WGA members, had worked as a team, the WGA Agreement were applicable, and you and Avary were the sole writers entitled to residuals on the Picture. You and Avary shall share such residuals in equal shares. You and Avary shall only receive such portion of the WGA residuals as are payable to individual WGA members (i.e., as distinguished from WGA residuals payable to the WGA itself or to the WGA pension, health, and welfare funds).

8. Subject to any restrictions set forth in the Miramax Agreement, Producer shall have the right to use your name in connection with the promotion, publicity, and marketing of the Picture; provided, however, that Producer shall not have the right to use your name in merchandising and/or commercial tie-ups without your prior, written approval. Notwithstanding the foregoing, if you approve any merchandising item under Paragraph 8 of the Miramax Agreement, Producer's use of your name in the billing block or key art from the Picture in connection with any such merchandising item shall be deemed approved by you. You may furnish Producer with your biography. Provided that you timely furnish such biography to Producer, Producer shall not have the right to use any biographical information about you other than as contained in such biography (other than references to your prior professional credits and your services on the Picture) without your prior approval, which approval shall not be unreasonably withheld.

9. You hereby agree to execute and deliver any and all additional documents reasonably required by Producer to effectuate its rights hereunder and you hereby grant to Producer the right to file and record such documents in the United States Copyright Office and/or elsewhere. In the event you fail to execute and deliver such documents within a reasonable time period after Producer's request, you hereby appoint Producer as your attorney-in-fact (which appointment is coupled with an interest and irrevocable) to execute such documents on your behalf. Concurrently with your execution hereof, you agree to sign and date the attached short form option agreement and to sign the attached short form assignment agreement. Upon receipt of such documents, Producer shall be entitled to record the short form option agreement in the United States Copyright Office. If Producer

exercises the Option, Producer shall be entitled to insert the date of such exercise on the short form assignment and file same in the United States Copyright Office. If Producer does not exercise the Option (or if Producer exercise the Option but the rights in the Screenplay later revert to you as provided above) such short form assignment shall at the time the Option lapses (or at the time such rights revert to you) become null and void.

10. This agreement is freely assignable by Producer without limitation and, if such assignee assumes Producer's executory obligations hereunder in writing and is a major motion picture or television distributor, a network, or a person or entity of similar financial responsibility, Producer shall upon such assignment be relieved of all obligations hereunder to you. You hereby acknowledge that Miramax is such an entity of similar financial responsibility. You shall not have the right to assign this agreement in whole or in part.

11. In the event of any breach by Producer hereunder, you agree that you shall be limited to your rights to recover damages, if any, at law only, you hereby waive all injunctive and other equitable remedies, and in no such event shall you be entitled thereby to interfere with or prevent the development, production, distribution, advertising, and exploitation of any motion picture or other production based upon the Screenplay (including, without limitation, the Picture) and/or any rights therein.

12. The parties agree that this agreement incorporates such standard terms and conditions (subject to good faith negotiation within customary business parameters) as are customarily applicable to an agreement of this nature. Such terms and conditions shall include, without limitation, full representations, warranties, and indemnifications, the applicability of United States and California law, extensions for the running of all periods of time hereunder during such time as an event of force majeure (but in no event shall any extension for an event of force majeure continue for more than three months) and/or any claim relating to your representations, warranties, and/or grant of rights hereunder may exist. In the event Producer prepares and forwards to you a more formal agreement incorporating the terms hereof and such other terms and conditions, you agree to promptly negotiate same in good faith within customary business parameters and to sign and deliver same to Producer. This agreement supersedes and replaces any other agreement between the parties with respect to its subject matter

and shall inure to the benefit of the parties' successors, heirs, assigns, and licensees.

If the foregoing accurately sets forth the terms of the agreement between you and Producer, kindly so indicate by signing in the space provided below.

Sincerely,

BROWN 25 PRODUCTIONS, INC.

By: _____
Its: _____ President

AGREED TO AND ACCEPTED:

_____
QUENTIN TARANTINO