FREEDMAN + TAITELMAN, LLP
Bryan J. Freedman (Bar No. 151990)
bfreedman@ftllp.com
Jesse A. Kaplan (Bar No. 255059)
jkaplan@ftllp.com
Theresa Troupson, Esq. (Bar No. 301215)
ttroupson@ftllp.com
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Telephone: (310) 201-0005
Facsimile:  (310) 201-0045

IRELL & MANELLA, LLP
David Nimmer  (Bar No. 97170)
dnimmer@irell.com
Dennis J. Courtney (Bar No. 307646)
dcourtney@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 203-7079
Facsimile:  (310) 203 -7199

Attorneys for Defendants Quentin Tarantino
and Visiona Romantica, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRAMAX, LLC,<br><br>   Plaintiff,<br><br>   vs.<br><br>QUENTIN TARANTINO; VISIONA ROMANTICA INC.; and DOES 1–50,<br><br>   Defendants. | Case No. 2:21-cv-08979-FMO-JC<br><br>[Assigned to Honorable Fernando M. Olguin]<br><br>**QUENTIN TARATINO'S AND VISIONA ROMANTICA INC.'S ANSWER TO THE COMPLAINT**<br><br>**REQUEST FOR JURY TRIAL** |

Defendants Quentin Tarantino and Visiona Romantica, Inc. ("Defendants"), by and through the undersigned counsel, hereby answer the Complaint ("Complaint") of plaintiff Miramax, LLC ("Plaintiff"), as follows:

## INTRODUCTION

Twenty-eight years ago, Quentin Tarantino wrote a screenplay that would change the future of the entertainment business. He subsequently directed a film based on that screenplay, a critical darling and financial success that would, more than any other motion picture, define Miramax's role atop the independent film pyramid. That movie, of course, was *Pulp Fiction*.

Now a shell of its former self and flailing under a new ownership consortium, Miramax has decided to bite the hand that fed it for so many years by bringing this offensively meritless lawsuit. As Miramax knows well, Tarantino has every right to publish portions of his original handwritten screenplay for *Pulp Fiction*, a personal creative treasure that he has kept private for decades. Tarantino's contracts clearly and unambiguously grant him the opportunity to do so – those rights were carefully identified, bargained for and memorialized – and Miramax in its prior incarnation freely agreed. But now, the new Miramax implausibly attempts to use the concept of NFTs to confuse the public and mislead this Court in an effort to deny artists such as Tarantino their hard earned and long-standing rights. Fortunately, Tarantino's *Pulp Fiction* contracts are clear, as is the law, and this ill-conceived lawsuit will not succeed in preventing Tarantino from exercising his contractual rights.

## THE COMPLAINT'S ALLEGATIONS

1. Answering the allegations in Paragraph 1 of the Complaint, Defendants admit that Tarantino has announced that portions of his original *Pulp Fiction* screenplay would be published via NFTs. Defendants further admit that Tarantino also announced that an NFT version of a portion of his original screenplay would be offered at an auction. Defendants are without knowledge or information as to the truth of the allegation of what was reported in the media, and therefore deny such

allegation. Defendants are without knowledge or information as to the truth of the allegation that the website https://tarantinonfts.com/, states that "[t]he collection holds secrets from Pulp Fiction," and "[e]ach NFT contains one or more previously unknown secrets of a specific iconic scene from Pulp Fiction" and that the "privileged" purchasers "will get a hold of those secrets", and therefore deny such allegation. Defendants deny all other allegations in this paragraph.

2. Answering the allegations in Paragraph 2 of the Complaint, Defendants admit that prior to the public announcement, Tarantino did not speak to Miramax about portions of his original *Pulp Fiction* screenplay being potentially published via NFTs. Defendants deny that any such disclosure was required. Defendants further admit that Miramax has previously financed some of Tarantino's film(s). Defendants further admit that *Pulp Fiction*, *Jackie Brown*, and *Kill Bill: Volumes 1 and 2* were critically and commercially successful films. Defendants further admit that Tarantino has spoken to third-parties about the potential development and potential sale of NFT versions of his screenplays. Defendants deny all other allegations in this paragraph.

3. Answering the allegations in Paragraph 3 of the Complaint, Defendants deny such allegations.

4. Answering the allegations in Paragraph 4 of the Complaint, Defendants are without knowledge or information as to the truth of the allegation that Miramax learned of any plan by Tarantino, and therefore deny such allegation. Defendants admit that counsel for Miramax sent a cease and desist letter to Tarantino's counsel on November 4, 2021, and that the cease and desist letter speaks for itself. Defendants further admit that Tarantino's "Reserved Rights" under the operative agreements "are sufficient." Defendants deny all other allegations in this paragraph.

5. Answering the allegations in paragraph 5 of the Complaint, Defendants deny that Tarantino had any plans to distribute or authorize distribution of Miramax's intellectual property via NFT. Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such

allegations.

6. Answering the allegations in Paragraph 6 of the Complaint, Defendants admit that Tarantino is a valued talent relationship. Defendants deny all other allegations in this paragraph.

7. Answering the allegations in Paragraph 7 of the Complaint, Defendants are without knowledge or information as to the truth of those allegations, and therefore deny such allegations.

8. Answering the allegations in Paragraph 8 of the Complaint, Defendants admit that Tarantino is a United States Citizen. Defendants are without knowledge or information as to whether or not Tarantino qualifies as a resident of Israel, which calls for a legal conclusion. Defendants admit that Tarantino has ownership interests in entities that own businesses within Los Angeles, California, including the New Beverly Cinema and the Vista Theatre. Defendants deny all other allegations in this paragraph.

9. Answering the allegations in Paragraph 9 of the Complaint, Defendants admit such allegations.

10. Paragraph 10 of the Complaint requires no response as it merely states a legal conclusion. Moreover, there is no rule in federal practice expressly authorizing the use of the Doe defendants. To the contrary, the federal rules of civil procedure expressly require that each defendant be named and identified by their capacity to be sued. Defendants reserve all rights under the federal rules of civil procedure, including without limitation the right to oppose amendments of pleadings, including pleadings that purport to add additional defendants to this action. To the extent required, Defendants are without knowledge or information as to the truth of any allegations as to individuals or entities not named in the Complaint, and therefore deny such allegations.

11. Paragraph 11 of the Complaint requires no response as it merely states a legal conclusion.

12. Paragraph 12 of the Complaint requires no response as it merely states a legal conclusion.

13. Paragraph 13 of the Complaint requires no response as it merely states a legal conclusion.

14. Paragraph 14 of the Complaint requires no response as it merely states a legal conclusion, but to the extent required, Defendants deny that there are any events giving rise to Miramax's claims.

15. Answering the allegations in Paragraph 15 of the Complaint, Defendants admit that Miramax is a film and television studio. Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such allegations.

16. Answering the allegations in Paragraph 16 of the Complaint, Defendants admit that *Pulp Fiction* is an influential film. Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such allegations.

17. Answering the allegations in Paragraph 17 of the Complaint, Defendants admit that *Pulp Fiction* is a prestigious and critically acclaimed film that has been highly lucrative for Miramax. Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such allegations.

18. Answering the allegations in paragraph 18 of the Complaint, Defendants admit that *Pulp Fiction* was written and directed by Quentin Tarantino, and produced by Lawrence Bender. Defendants further admit that Quentin Tarantino and Lawrence Bender formed B25 Productions as a single purpose entity to produce and deliver the film to Miramax Film Corp. as the distributor. Defendants deny all other allegations in this paragraph.

19. Answering the allegations in paragraph 19 of the Complaint, Defendants admit that effective as of June 23, 1993, Tarantino and Bender entered into an

1  agreement (the "Original Rights Agreement") with Miramax Film Corp. ("Miramax
2  Corp"), and that a copy of that Original Rights Agreement is attached to the
3  Complaint as Exhibit A. Defendants further admit that the Original Rights Agreement
4  speaks for itself. Defendants are without sufficient knowledge or information as to the
5  truth of whether Miramax Corp is the predecessor in interest to Miramax, and
6  therefore denies such allegation.

7        20.    Answering the allegations in paragraph 20 of the Complaint, Defendants
8  admit that pursuant to paragraphs 2-4 of the Original Rights Agreement, Tarantino
9  and Bender initially granted certain rights to Miramax Corp in exchange for valuable
10 consideration, but that agreement was later restructured with the consent of Miramax
11 Corp. Defendants further admit that certain rights were excluded and reserved to
12 Tarantino under the Original Rights Agreement, the B25 Agreement attached to the
13 Complaint as Exhibit B, the letter agreement dated July 10, 1993 attached to the
14 Complaint as Exhibit D, an Assignment dated July 15, 1993 attached to the Complaint
15 as Exhibit E, a Short-Form Assignment Agreement attached to the Complaint as
16 Exhibit F, and a certain "Notice" dated as of September 20, 1993, and that those
17 documents speak for themselves. Defendants further admit that Paragraph 2 of the
18 Original Rights Agreement states as follows:

> The rights granted to Miramax herein are hereinafter referred to as the "Rights". Producer hereby grants to Miramax for the "Territory" and "Term" (both defined below) all rights (including all copyrights and trademarks) in and to the Film (and all elements thereof in all stages of development and production) now or hereafter known including without limitation the right to distribute the Film in all media now or hereafter known (theatrical. Non-theatrical, all forms of television, home video, etc.) but excluding only the following rights ("Reserved Rights") which are reserved to Tarantino: soundtrack album, music publishing, live performance, print publication (including without limitation screenplay publication, "making of" books, comic books and novelization, in audio and electronic formats as well, as applicable), interactive media, theatrical and television sequel and remake rights, and television series and spinoff rights. Exercise of

certain of the Reserved Rights is subject to restrictions set forth elsewhere in this agreement. Tarantino shall have the right to use the title of the Film in connection with the exploitation of the Reserved Rights. For the purpose of this agreement, "interactive media" means any interactive device or mechanism, such as a computer game based on the Film, which may include literary or character elements used in the Film but shall not be a substantial replication or viewing of the Film. Interactive media rights, if not hereafter acquired by Miramax, shall he subject to a holdback to be negotiated in good faith, with a particular view to avoiding competition with home video. Miramax may publish for promotional purposes excerpts up to 7500 words from the screenplay on a not-for-sale basis.

21.     Answering the allegations in paragraph 21 of the Complaint, Defendants admit that Paragraph 2 of the Original Rights Agreement in conjunction with the B25 Agreement attached to the Complaint as Exhibit B, the letter agreement dated July 10, 1993 attached to the Complaint as Exhibit D, an Assignment dated July 15, 1993 attached to the Complaint as Exhibit E, a Short-Form Assignment Agreement attached to the Complaint as Exhibit F, and a certain "Notice" dated as of September 20, 1993 defined Tarantino's "Reserved Rights", and that those documents speak for themselves.  Defendants further admit that Paragraph 2 of the Original Rights Agreement states as follows:

> The rights granted to Miramax herein are hereinafter referred to as the "Rights". Producer hereby grants to Miramax for the "Territory" and "Term" (both defined below) all rights (including all copyrights and trademarks) in and to the Film (and all elements thereof in all stages of development and production) now or hereafter known including without limitation the right to distribute the Film in all media now or hereafter known (theatrical. Non-theatrical, all forms of television, home video, etc.) but excluding only the following rights ("Reserved Rights") which are reserved to Tarantino: soundtrack album, music publishing, live performance, print publication (including without limitation screenplay publication, "making of" books, comic books and novelization, in audio and electronic formats as well, as applicable), interactive media, theatrical and television sequel and remake rights, and television series and spinoff rights. Exercise of

> certain of the Reserved Rights is subject to restrictions set forth elsewhere in this agreement. Tarantino shall have the right to use the title of the Film in connection with the exploitation of the Reserved Rights. For the purpose of this agreement, "interactive media" means any interactive device or mechanism, such as a computer game based on the Film, which may include literary or character elements used in the Film but shall not be a substantial replication or viewing of the Film. Interactive media rights, if not hereafter acquired by Miramax, shall he subject to a holdback to be negotiated in good faith, with a particular view to avoiding competition with home video. Miramax may publish for promotional purposes excerpts up to 7500 words from the screenplay on a not-for-sale basis.

22. Answering the allegations in Paragraph 22 of the Complaint, Defendants further admit that Paragraph 2 of the Original Rights Agreement states as follows:

> The rights granted to Miramax herein are hereinafter referred to as the "Rights". Producer hereby grants to Miramax for the "Territory" and "Term" (both defined below) all rights (including all copyrights and trademarks) in and to the Film (and all elements thereof In all stages of development and production) now or hereafter known including without. limitation the right to distribute the Film in all media now or hereafter known (theatrical. Non-theatrical, all forms of television, home video, etc.) but excluding only the following rights ("Reserved Rights") which are reserved to Tarantino: soundtrack album, music publishing, live performance, print publication (including without limitation screenplay publication, "making of" books, comic books and novelization, in audio and electronic formats as well, as applicable), interactive media, theatrical and television sequel and remake rights, and television series and spinoff rights. Exercise of certain of the Reserved Rights is subject to restrictions set forth elsewhere in this agreement. Tarantino shall have the right to use the title of the Film in connection with the exploitation of the Reserved Rights. For the purpose of this agreement, "interactive media" means any interactive device or mechanism, such as a computer game based on the Film, which may include literary or character elements used in the Film but shall not be a substantial replication or viewing of the Film. Interactive media rights, if not hereafter acquired by Miramax, shall he subject to a holdback to be negotiated in good faith, with a particular view to avoiding competition with home video. Miramax

may publish for promotional purposes excerpts up to 7500 words from the screenplay on a not-for-sale basis.

Defendants deny all other allegations in this paragraph.

23. Answering the allegations in Paragraph 23 of the Complaint, Defendants admit that as of July 10, 1993, Tarantino and B25 Productions entered into a letter agreement regarding *Pulp Fiction* (the "B25 Agreement"), and that a copy of that B25 Agreement is attached to the Complaint as Exhibit B. Defendants further admit that the B25 Agreement speaks for itself.

24. Answering the allegations in Paragraph 24 of the Complaint, Defendants admit that Miramax Corp sent a letter to Tarantino's counsel dated as of July 10, 1993, and that a copy of that letter is attached to the Complaint as Exhibit C. Defendants further admit that the letter speaks for itself. Defendants admit that letter stated as follows:

> We hereby consent to the transfer of certain rights from Quentin Tarantino to Brown 25 Productions, Inc. as set forth in the agreement dated as of July 10, 1993 between Quentin Tarantino and Brown 25 Productions, Inc. (the "Brown 25 Agreement"). However, nothing contained in the Brown 25 Agreement shall diminish or derogate from the rights granted to Miramax under the dated as of agreement June 23, 1993 between Quentin Tarantino and Lawrence Bender, on the one hand, and Miramax, on the other (the "Miramax Agreement"). In the event of any conflict between the Brown 25 Agreement and the Miramax Agreement, the Miramax Agreement shall control.

Defendants further admit that Tarantino, Bender and B25 Productions requested Miramax's consent, that Miramax Corp provided such consent, and that neither Tarantino nor Tarantino's counsel refuted or rejected Miramax Corp's letter.

25. Answering the allegations in Paragraph 25 of the Complaint, Defendants admit that B25 Productions, Tarantino, Bender and Miramax Film Corp signed a letter agreement dated July 10, 1993, and that a copy of that letter agreement is attached to the Complaint as Exhibit D. Defendants further admit that the letter agreement speaks

for itself. Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such allegations.

26. Answering the allegations in Paragraph 26 of the Complaint, Defendants admit that on or about July 15, 1993, Tarantino executed a notarized Assignment dated June 23, 1993, and that a copy of that Assignment is attached to the Complaint as Exhibit E. Defendants further admit that the Assignment speaks for itself. Defendants further admit that Miramax Corp consented to a restructuring whereby Tarantino granted certain rights to B25, and in turn, B25 granted certain rights to Miramax Corp. Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such allegations.

27. Answering the allegations in Paragraph 27 of the Complaint, Defendants admit that the Assignment attached to the Complaint as Exhibit E speaks for itself. Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such allegations.

28. Answering the allegations in Paragraph 28 of the Complaint, Defendants admit that the Assignment attached to the Complaint as Exhibit E speaks for itself. Defendants further admit that the Assignment to the Complaint as Exhibit E includes the following language:

> The following rights are reserved to Quentin Tarantino: soundtrack album, music publishing, live performance, print publication (including, without limitation, screenplay publication, "making of" books, comic books and novelization, in audio and electronic formats as well, as applicable), interactive media, theatrical and television sequel and remake rights, and television series and spinoff rights (the "Tarantino Reserved Rights"). The exercise of certain Reserved Rights is subject to restrictions set forth in the Agreement.

29. Answering the allegations in Paragraph 29 of the Complaint, Defendants admit that on or about September 3, 1993, Tarantino signed a certain Short-Form Assignment Agreement, that a copy of that Short-Form Assignment Agreement is attached to the Complaint as Exhibit F, and that the Short-Form Assignment

Agreement speaks for itself.  Defendants deny that the Short-Form Assignment Agreement is void.  Defendants deny all other allegations in this paragraph.

30.     Answering the allegations in Paragraph 30 of the Complaint, Defendants admit that on or about September 3, 1993, B25 Productions executed a certain "Notice" dated as of September 20, 1993, and that the "Notice" speaks for itself.

31.     Answering the allegations in Paragraph 31 of the Complaint, Defendants are without knowledge or information as to the truth of those allegations, and therefore deny such allegations.

32.     Answering the allegations in Paragraph 32 of the Complaint, Defendants admit that B25 Productions was dissolved on or around January 8, 1996.  Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such allegations.

33.     Answering the allegations in Paragraph 33 of the Complaint, Defendants are without knowledge or information as to the truth of those allegations, and therefore deny such allegations.

34.     Answering the allegations in Paragraph 34 of the Complaint, Defendants are without knowledge or information as to the truth of those allegations, and therefore deny such allegations.

35.     Answering the allegations in Paragraph 35 of the Complaint, Defendants are without knowledge or information as to the truth of those allegations, and therefore deny such allegations.

36.     Answering the allegations in paragraph 36 of the Complaint, Defendants deny such allegations.

37.     Answering the allegations in Paragraph 37 of the Complaint, Defendants deny that Tarantino has sold any Pulp Fiction NFTs or that Tarantino was required to consult with Miramax.  Defendants admit that prior to the public announcement, Tarantino did not speak to Miramax about portions of his original *Pulp Fiction* screenplay potentially being made available in NFTs.  Defendants further admit that

the Original Rights Agreement, the Tarantino-Miramax Assignment and the B25 Instrument of Transfer speak for themselves in terms of any rights that were granted.

38. Answering the allegations in Paragraph 38 of the Complaint, Defendants are without knowledge or information as to the truth of those allegations, and therefore deny such allegations.

39. Answering the allegations in Paragraph 39 of the Complaint, Defendants admit that Tarantino stated that "I'm excited to be presenting these exclusive scenes from PULP FICTION to fans", or words to that effect. Defendants are without knowledge or information as to the substance of any "Press Release", and therefore deny any allegations concerning what was stated in any "Press Release". Defendants further admit that in or around early November 2021, Tarantino attended the NFT.NYC crypto-art conference in New York City and that at that conference, Tarantino announced that portions of his original *Pulp Fiction* screenplay would be published via NFTs. Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such allegations.

40. Answering the allegations in Paragraph 40 of the Complaint, Defendants deny that Tarantino established the Website. Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such allegations.

41. Answering the allegations in Paragraph 41 of the Complaint, Defendants are without knowledge or information as to the truth of those allegations, and therefore deny such allegations.

42. Answering the allegations in paragraph 42 of the Complaint, Defendants deny such allegations.

43. Answering the allegations in paragraph 43 of the Complaint, Defendants admit that counsel for Miramax sent a cease and desist letter to Tarantino's counsel on November 4, 2021, and that the cease and desist letter speaks for itself. Defendants deny that the cease and desist letter's allegations were true and correct.

44. Answering the allegations in paragraph 44 of the Complaint, Defendants admit that counsel for Miramax sent a cease and desist letter to Tarantino's counsel on November 4, 2021, and that the cease and desist letter speaks for itself. Defendants deny that the cease and desist letter's allegations were true and correct.

45. Answering the allegations in paragraph 45 of the Complaint, Defendants admit that Tarantino's counsel e-mailed Miramax on November 5, 2021, and that e-mail speaks for itself. Defendants further admit that Tarantino's counsel stated, among other things, that "This will be an NFT collection consisting of 7 NFTs, each containing a high-resolution digital scan of Quentin's original handwritten screenplay pages for a single scene from his screenplay for Pulp Fiction." Defendants deny that Tarantino's counsel confirmed any statements from any Press Release.

46. Answering the allegations in paragraph 46 of the Complaint, Defendants admit that Tarantino's counsel stated, among other things, that the NFTs would contain a digital scan of portions of Tarantino's original *Pulp Fiction* screenplay and that there is "no other embellishment or additions to the actual screenplay scans themselves." Defendants further admit that Tarantino's counsel, stated, among other things, that "for each NFT, there will be a kind of 'book cover' that will be a static original drawing that will be inspired by some element from the scene … that they cannot use any images from the film itself in this regard. These drawings have not yet been rendered, but that is the plan." Defendants further admit that Tarantino's counsel correctly contended that Tarantino was acting within his "Reserved Rights", including the right to publish Tarantino's *Pulp Fiction* screenplay. Defendants deny all other allegations in this paragraph.

47. Answering the allegations in paragraph 47 of the Complaint, Defendants deny that Tarantino had any plans to sell or distribute Miramax's intellectual property via NFTs. Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such allegations.

48. Answering the allegations in Paragraph 48 of the Complaint, Defendants

are without knowledge or information as to the truth of those allegations, and therefore deny such allegations.

49. Answering the allegations in Paragraph 49 of the Complaint, Defendants are without knowledge or information as to the truth of those allegations, and therefore deny such allegations.

50. Answering the allegations in Paragraph 50 of the Complaint, Defendants are without knowledge or information as to the truth of the allegations about the substance of any media reports.  Defendants further deny that the cease and desist letter contained any demands to which Tarantino or his counsel were required to comply.  Defendants deny all other allegations in this paragraph.

51. Answering the allegations in paragraph 51 of the Complaint, this paragraph does not allege any facts that can be admitted or denied.

52. Answering the allegations in paragraph 52 of the Complaint, Defendants admit that pursuant to paragraphs 2-4 of the Original Rights Agreement and the Assignment attached to the Complaint as Exhibit E, Tarantino granted certain rights to Miramax Corp in exchange for valuable consideration, and that the Original Rights Agreement and the Assignment speaks for themselves.  Defendants further admit that Tarantino had Reserved Rights under both the Original Rights Agreement and the Assignment.

53. Answering the allegations in paragraph 53 of the Complaint, Defendants deny such allegations.

54. Answering the allegations in paragraph 54 of the Complaint, this paragraph does not allege any facts that can be admitted or denied.

55. Answering the allegations in paragraph 55 of the Complaint, the allegation that the finished motion picture *Pulp Fiction* and all elements thereof in all stages of development and production are all original works containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq., requires no response as it merely states a legal conclusion.

Defendants admit that Tarantino has certain "Reserved Rights" to *Pulp Fiction* as enumerated by various agreements. Defendants are without sufficient knowledge or information as to the truth of the remaining allegations, and therefore deny such allegations.

56. Answering the allegations in paragraph 56 of the Complaint, Defendants deny such allegations.

57. Answering the allegations in paragraph 57 of the Complaint, Defendants deny such allegations.

58. Answering the allegations in paragraph 58 of the Complaint, Defendants deny such allegations.

59. Answering the allegations in paragraph 59 of the Complaint, Defendants deny such allegations.

60. Answering the allegations in paragraph 60 of the Complaint, Defendants deny such allegations.

61. Answering the allegations in paragraph 61 of the Complaint, this paragraph does not allege any facts that can be admitted or denied.

62. Answering the allegations in paragraph 62 of the Complaint, Defendants deny such allegations.

63. Answering the allegations in paragraph 63 of the Complaint, Defendants deny such allegations.

64. Answering the allegations in paragraph 64 of the Complaint, Defendants deny such allegations.

65. Answering the allegations in paragraph 65 of the Complaint, Defendants deny such allegations.

66. Answering the allegations in paragraph 66 of the Complaint, this paragraph does not allege any facts that can be admitted or denied.

67. Answering the allegations in paragraph 67 of the Complaint, Defendants deny such allegations.

68. Answering the allegations in paragraph 68 of the Complaint, Defendants deny such allegations.

69. Answering the allegations in paragraph 69 of the Complaint, Defendants deny such allegations.

70. Answering the allegations in paragraph 70 of the Complaint, Defendants deny such allegations.

71. Answering the allegations in paragraph 71 of the Complaint, Defendants deny such allegations.

72. Answering the allegations in paragraph 72 of the Complaint, Defendants deny such allegations.

## AFFIRMATIVE AND OTHER DEFENSES

By alleging the following Affirmative and Other Defenses, Defendants are not in any way agreeing or conceding that they have the burden of proof or burden of persuasion on any of these issues.  As separate and distinct defenses to Plaintiff's Complaint, and each purported cause of action contained therein, Defendants allege as follows:

## FIRST DEFENSE

73. The Complaint, and each claim alleged therein, fails to state facts sufficient to constitute any claim for relief against Defendants.

## SECOND DEFENSE

74. The Complaint, and each and every claim alleged therein, is barred as Plaintiff lacks standing to sue.

## THIRD DEFENSE

75. The Complaint's Second claim for copyright infringement, Third claim for trademark infringement, and Fourth claim for unfair competition are barred as Defendants' alleged conduct constitutes fair use under the applicable law.

/ / /

/ / /

## FOURTH DEFENSE

76. The Complaint, and each and every claim alleged therein, is barred as Defendants were authorized by Plaintiff to engage in the allegedly wrongful conduct.

## FIFTH DEFENSE

77. The Complaint's Second claim for copyright infringement is barred by the fact that the elements allegedly infringed are not covered by the registrations on which the Complaint relies.

## SIXTH DEFENSE

78. The Complaint, and each and every claim alleged therein, is barred as Plaintiff has waived its claims.

## SEVENTH DEFENSE

79. The Complaint, and each and every claim alleged therein, is barred as Plaintiff is estopped from asserting its claims.

## EIGHTH DEFENSE

80. The Complaint, and each and every claim alleged therein, is barred as Plaintiff acted with unclean hands.

## NINTH DEFENSE

81. The Complaint's Third and Fourth claims are barred in whole or in part by the First Amendment of the United States Constitution.

## RESERVATION OF ADDITIONAL DEFENSES

82. Defendants presently have insufficient knowledge or information on which to form a belief as to whether they may have additional, as yet unstated defenses available. Defendants reserve the right to assert additional defenses if they become apparent via discovery or otherwise.

/ / /
/ / /
/ / /
/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants pray for relief as follows:

1. That the Complaint be dismissed with prejudice, and Plaintiff take nothing herein;

2. That judgment be entered in favor of Defendants and against Plaintiff;

3. That Defendants be awarded their reasonable attorneys' fees under the Copyright Act as prevailing parties;

4. That Defendants be awarded their reasonable attorneys' fees under the Lanham Act as prevailing parties;

5. For costs of suit incurred in this action; and

6. For such other and further relief as the Court may deem just and proper.

Dated:  December 9, 2021            FREEDMAN + TAITELMAN, LLP


By:   /s/ Bryan. J. Freedman        
        Bryan J. Freedman
        Jesse A. Kaplan
        Theresa Troupson
    Attorneys for Defendants Quentin
    Tarantino and Visiona Romantica, Inc.

Dated:  December 9, 2021            IRELL & MANELLA, LLP


By:   /s/ David Nimmer        
        David Nimmer
        Dennis Courtney
    Attorneys for Defendants Quentin
    Tarantino and Visiona Romantica, Inc.

# JURY TRIAL DEMAND

Pursuant to Fed R. Civ. Proc. 38 and U.S. Const. Amend. VII, Defendants hereby demand that all claims be tried by a jury.

Dated: December 9, 2021                    FREEDMAN + TAITELMAN, LLP

By: /s/ Bryan. J. Freedman
    Bryan J. Freedman
    Jesse A. Kaplan
    Theresa Troupson
Attorneys for Defendants Quentin Tarantino and Visiona Romantica, Inc.

Dated: December 9, 2021                    IRELL & MANELLA, LLP

By: /s/ David Nimmer
    David Nimmer
    Dennis Courtney
Attorneys for Defendants Quentin Tarantino and Visiona Romantica, Inc.