BART H. WILLIAMS (SBN 134009)
bwilliams@proskauer.com
KYLE A. CASAZZA (SBN 254061)
kcasazza@proskauer.com
SETH H. VICTOR (SBN 329341)
svictor@proskauer.com
ALYSON C. TOCICKI (SBN 336179)
atocicki@proskauer.com
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA  90067-3010
Telephone:    (310) 284-4520
Facsimile:    (310) 557-2193

JEFFREY D. NEUBURGER (admitted *pro hac vice*)
jneuburger@proskauer.com
WAI L. CHOY (admitted *pro hac vice*)
wchoy@proskauer.com
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone:    (212) 969-3000
Facsimile:    (212) 969-2900

Attorneys for Plaintiff,
MIRAMAX, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRAMAX, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>QUENTIN TARANTINO; VISIONA ROMANTICA, INC.; and DOES 1–50,<br><br>　　　　　Defendants. | Case No. 2:21-cv-08979 FMO (JCx)<br><br>**JOINT RULE 26(F) REPORT**<br><br>Scheduling Conference: February 24, 2022 |

Pursuant to Fed. R. Civ. P. 16(b), 26(f), and C.D. Cal. L. R. 26-1, a telephonic conference was held on February 2, 2022. Bart Williams, Kyle Casazza, and Seth Victor attended for Plaintiff Miramax, LLC. Bryan Freedman, Jesse Kaplan, and Theresa Troupson attended for Defendants Quentin Tarantino and Visiona Romantica, Inc.

a.  **Statement of the Case**

**Plaintiff's Statement:** This case is about non-fungible tokens ("NFTs") related to the motion picture *Pulp Fiction* (the "Pulp Fiction NFTs"). In 1993 and 1994, Plaintiff Miramax, LLC, and Defendants Quentin Tarantino and Visiona Romantica, Inc. entered into a series of agreements governing their respective rights in and to *Pulp Fiction*. Miramax alleges that the agreements granted to Miramax all rights in and to the motion picture, including the right to distribute it in all media now or hereafter known, and excluding only a set of limited "Reserved Rights" retained by Tarantino. Miramax asserts that the development, marketing, and sale of the Pulp Fiction NFTs infringes its rights under those agreements. Tarantino and Visiona Romantica, Inc. deny the allegations and assert that Tarantino's limited "Reserved Rights" under the agreements encompass the necessary rights to develop, market, and sell the Pulp Fiction NFTs.

Tarantino and Visiona Romantica, Inc. are selling the Pulp Fiction NFTs in collaboration with non-parties Secret Labs and Guy Zyskind. On January 24, 2022, Secret Labs announced that the first of seven Pulp Fiction NFTs had sold for $1.1 million. The remaining six Pulp Fiction NFTs were scheduled to be sold during that same week, but the auctions were postponed indefinitely, with Secret Labs citing "extreme market volatility."

Plaintiff Miramax, LLC, asserts four causes of action: (1) breach of contract; (2) copyright infringement under 17 U.S.C. § 501; (3) trademark infringement under 15 U.S.C. § 1114; and (4) unfair competition under 15 U.S.C. § 1125(a).

1    Miramax's breach of contract claim asserts that the parties' Original Rights
2    Agreement (as defined in the Complaint) and the subsequent Tarantino-Miramax
3    Assignment (as defined in the Complaint) granted and assigned to Miramax all
4    rights in and to *Pulp Fiction*, including the right to distribute *Pulp Fiction* "in all
5    media now or hereafter known," except for a limited set of Tarantino's Reserved
6    Rights. Defendants assert that the limited Reserved Rights include the right to
7    develop, market, and sell the Pulp Fiction NFTs.

8    Miramax's copyright infringement claim asserts that Defendants'
9    development, marketing, and sale of the Pulp Fiction NFTs willfully infringes on
10   Miramax's exclusive rights in *Pulp Fiction*.

11   Miramax's trademark infringement claim asserts that Miramax owns a
12   registered trademark in *Pulp Fiction* (the "Pulp Fiction Mark"), and Defendants'
13   use of the Pulp Fiction Mark is unauthorized and thus infringes on Miramax's
14   trademark and is likely to deceive consumers as to the origin, source, sponsorship,
15   or affiliation of the Pulp Fiction NFTs.

16   Miramax's unfair competition claim asserts that Defendants' use of the Pulp
17   Fiction mark is unauthorized and is likely to cause consumers to incorrectly believe
18   that the Pulp Fiction NFTs are sold, authorized, endorsed, or sponsored by
19   Miramax.

20   **Defendants' Statement:** This case is about non-fungible tokens ("NFTs")
21   which provide access to digital copies of portions of the original, hand-annotated
22   screenplay for *Pulp Fiction* (the "Screenplay NFTs"). In 1993 and 1994, Miramax
23   Film Corp. and Defendant Quentin Tarantino entered into a series of agreements
24   whereby Tarantino granted Plaintiff certain limited rights in *Pulp Fiction*-related
25   intellectual property. Miramax alleges that the development, marketing, and sale of
26   the Screenplay NFTs infringes its rights under those agreements. Tarantino and
27   Visiona Romantica, Inc. deny the allegations as Tarantino has always reserved all
28

print publishing rights in his screenplay (including in electronic form) and may therefore develop, market, and sell the Screenplay NFTs.

By and through his agreements with Miramax Film Corp., Tarantino provided Miramax Film Corp. only with certain limited rights; that he reserved to himself all publishing rights in his screenplay; that he has published the screenplay for years without complaint from Miramax; and that he has the right to publish digital copies of his screenplay using and through the sale and distribution of NFTs. He further asserts that the name of the screenplay is and always has been "Pulp Fiction," that he has marketed and sold the screenplay under that name for many years, that his use of that name does not, in any way, violate any trademark rights owned by Plaintiff.

### b. Subject Matter Jurisdiction

This Court has federal question jurisdiction over Miramax's federal copyright infringement, trademark infringement, and unfair competition claims pursuant to 28 U.S.C. §§ 1331, 1338(a), 17 U.S.C. § 501(b), and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over Miramax's breach of contract claim relating to and arising from the same set of facts as Miramax's federal claims.

### c. Legal Issues

The legal issues in this case relate to interpretation and applicability of agreements governing the parties' respective rights related to *Pulp Fiction*, in particular Tarantino's reserved right of "screenplay publication," and whether Defendants' development, marketing, and sale of the NFTs violated the parties' agreements and federal copyright, trademark, and unfair competition law.

### d. Parties, Evidence, Etc.

The parties to this case are Plaintiff Miramax, LLC, Defendant Quentin Tarantino, and Defendant Visiona Romantica, Inc. Miramax, LLC identifies its parent corporation and any publicly held corporation owning 10% or more of its

stock as follows: FilmYard Holdings, LLC; and Viacom International Inc. Visiona Romantica Inc. has no subsidiaries, parents, or affiliates.

The key documents in this case include the documents defined in the Complaint as the Original Rights Agreement, the B25 Agreement, the Miramax Limited Consent Letter, the B25 Productions Letter, the Tarantino-Miramax Assignment, and the Void Tarantino-B25 Assignment (collectively the "Agreements").

To the extent that extrinsic evidence is relevant to construe the Agreements' meaning, the percipient witnesses in this case will consist primarily of individuals who were involved in the drafting and negotiation of those documents, including Quentin Tarantino, Carlos Goodman, Lawrence Bender, Vicki Cherkas, and John Logigian.

### e. Insurance

Plaintiff Miramax, LLC has no insurance coverage at issue in this lawsuit. Defendants do not believe they have insurance coverage that would be at issue in this lawsuit, but will continue to investigate.

### f. Magistrate Judge

The parties do not consent to a magistrate judge presiding over this action for all purposes.

### g. Discovery

The parties propose the following discovery plan, subject to the disagreements noted below:

- The parties will exchange Rule 26 initial disclosures on or before February 16, consistent with the Federal Rules of Civil Procedure and Local Rules.
- The parties propose a fact discovery cut-off of December 1, 2022.

- - To allow adequate time for the production of documents, Plaintiff proposes that depositions should commence no sooner than August 1, 2022.
  - Defendants do not believe a commencement date for depositions is necessary.
- The parties propose an expert discovery cut-off of April 15, 2023.
  - Expert disclosures on any issue on which the party bears the burden of proof would be due January 13, 2023.
  - Rebuttal disclosures would be due February 15, 2023.
    - Plaintiff believes expert replies would be appropriate in this case and proposes they be due March 8, 2023.
    - Defendants do not propose any submission of expert replies.

The parties will meet and confer as needed regarding (1) the disclosure, discovery, or preservation of electronically stored information, and (2) any issues relating to claims of privilege or of protection as trial-preparation materials.  The parties will try to resolve any discovery disputes among themselves in a courteous, reasonable and professional matter, and will raise discovery matters with Judge Chooljian only if those efforts are unsuccessful.

**Miramax's Position:** Discovery will be needed on information relating to the agreements governing the parties' rights in and to *Pulp Fiction*, the negotiation and interpretation of those agreements in the context at the time they were entered into, any agreements relating to the Pulp Fiction NFTs, any compensation to Defendants relating to the Pulp Fiction NFTs, any content associated with the Pulp Fiction NFTs, and the extent of Plaintiff's damages.

**Defendants' Position:** The amount of discovery necessary in this action will be limited as the Agreements governing the parties' rights related to *Pulp Fiction* are plain and unambiguous in their language, and the Court should interpret them

accordingly. To the extent that the Court holds that the language of any of the aforementioned agreements is ambiguous such that parol evidence is admissible to aid the Court in determining the parties' intent, discovery of the facts surrounding the negotiation of the aforementioned agreements will be necessary. Discovery will further be necessary to establish Defendants' affirmative defenses and Plaintiff's knowledge of Tarantino's publication and sale of the screenplay.

### h. Motions

Depending on information Plaintiff anticipates receiving in discovery, Plaintiff may file a motion for leave to amend its complaint to add Secret Labs, Guy Zyskind, and/or other affiliates of Mr. Tarantino or Secret Labs as defendants. Alternatively, Plaintiff may file a separate complaint and seek consolidation of the related actions.

### i. Class Certification

This is inapplicable because this matter is not a class action.

### j. Dispositive Motions

The parties both anticipate filing motions for summary judgment. The cross-motions for summary judgment would likely address the interpretation of the various contracts at issue in this litigation, including the application of that interpretation to federal copyright, trademark, and unfair competition law, and whether the development, marketing, and sale of the NFTs infringe upon Miramax's rights in and to *Pulp Fiction*.

The parties propose a summary judgment filing deadline of April 24, 2023.

#### a) Plaintiff's Position

Miramax believes staggered briefing would be appropriate, given the likelihood that the factual and legal issues will overlap. Miramax believes that Defendants should file first in light of Defendants' position that this action has no merit. The non-moving party's combined opposition and cross-motion would be due six weeks later, on June 5, 2023. The moving party's combined reply and

opposition would be due on July 17, 2023.  The non-moving party's reply would be due August 14, 2023.

      b)    <u>Defendants' Position</u>

Defendants propose a summary judgment filing deadline of April 24, 2023, with the understanding that the parties may file their motions on or before that date in accordance with the Federal Rules of Civil Procedure.

**k.**    **<u>Settlement/Alternative Dispute Resolution (ADR)</u>**

Miramax believes initial document discovery is needed before any settlement discussions could be productive.  Specifically, Miramax's position is that it needs to see all agreements relating to Defendants making the NFTs available for sale as well as all agreements governing any compensation or other remuneration of any kind Defendants are receiving in connection with the NFTs. Defendants do not believe that initial document discovery is necessary to engage in alternative dispute resolution as the documents that Miramax already has in its possession speak for themselves and are sufficient to be the basis for a resolution of the case.

The parties would prefer to use private mediation for settlement discussions.

**l.**    **<u>Pretrial Conference and Trial</u>**

Plaintiff proposes that the Final Pretrial Conference be scheduled for 60 days after the Court's decisions on the cross-motions for summary judgment, and that trial, if necessary, should commence as soon as practicable thereafter.  Defendants propose that the Final Pretrial Conference be scheduled after the deadline for motions for summary judgment once the Court determines what, if any, issues remain to be tried, and that trial, if necessary, should commence as soon as practicable thereafter.  In the alternative, Defendants agree with Plaintiff's proposal.

**m.**    **<u>Trial Estimate</u>**

Miramax estimates trial will take eight court days.  Miramax's estimate of eight court days is based on the number of fact and expert witnesses, and the

relative complexity of the factual and legal issues.  Defendants estimate that trial will take five court days. Defendants' estimate of five court days is based on the number of fact and expert witnesses and the factual and legal issues at stake.

Trial will be by jury.

Plaintiff preliminarily contemplates calling approximately eight witnesses in its case-in-chief.  Defendants estimate calling 5 to 7 witnesses.

### n.  Trial Counsel

Plaintiff's trial counsel will be Bart H. Williams and Kyle A. Casazza. Defendants' trial counsel will be Bryan J. Freedman, Jesse Kaplan, and David Nimmer.

### o.  Independent Expert or Master

The parties agree that this case does not require an independent expert or master.

### p.  Other Issues

At the time of the filing of this Report, the parties are aware of two additional issues warranting the Court's attention: (1) Plaintiff's need for immediate discovery of information relating to any compensation or other compensation of any kind Defendants are receiving in connection with the NFTs; and (2) the necessity of a two-tier protective order.

1. Need for Immediate Discovery of Compensation Information

   a) Plaintiff's Position

As indicated in Section (k) above, to assist in settlement discussions, Plaintiff requires immediate production of the documents underlying any financial arrangements between Defendants, Secret Labs, OpenSea (the original intended auction house) or anyone else regarding the sale of the Pulp Fiction NFTs. Miramax served multiple document requests relating to this issue, and Defendants are refusing to produce documents responsive to Miramax's requests.

Defendants assert that Plaintiff knows "how much money was made from the sale of the one NFT that has been sold: at most, a little over one million dollars." First, Plaintiff does not know whether that figure, which was reported by Secret Labs (who minted and auctioned the NFT), is at all reliable. The reported sale price of $1.1 million resulted from Secret Labs' own private auction. The reported "buyer" was the @AnonsNFT DAO, "Secret Network's very first NFT collective," which may include Mr. Tarantino and Secret Labs insiders as members:

> Guy Zy$kind @GuyZys · Oct 29, 2021
> We are all @AnonsNFT
> 25    24    158

> Guy Zy$kind @GuyZys · Jan 15
> .@SecretNetwork community stood firmly with us @scrt_labs and @TarantinoNFTs that I'm inclined to ask Quentin that the first NFT sale ('Royale with Cheese' original screenplay) will also be made available for sale in $SCRT. Maybe even all of us @AnonsNFT should get it
> Yes/No?
> Yes (bid with $SCRT)    93.6%
> No ($ETH only)    6.4%
> 1,019 votes · Final results
> 30    40    130

The reported sale price may have been paid to Secret Labs in the $SCRT crypto token, which would have necessarily originated from Secret Labs. Ola, *Tarantino NFT #1 from SCRT Labs Sells at Auction for $1.1 million*, NFT Evening (Jan. 25, 2022), https://nftevening.com/tarantino-nft-1-from-scrt-labs-sells-at-auction-for-1-million ("In addition, while the auction took place on the Ethereum blockchain, bidders were able to bid using $SCRT, the native token of SCRT Labs' Secret Network."). And the reliability of the sale price is further called into question by the market volatility identified as the reason for indefinitely postponing sales of the remaining NFTs.

Also, regardless of what the first NFT purportedly sold for at auction, Plaintiff is entitled to know about any compensation or other remuneration that Defendants or others received in connection with the sale. Plaintiff does not know whether Defendants' compensation was entirely contingent on the sale price, or whether Defendants or anyone else received additional consideration relating in any way to the underlying sale of Miramax's intellectual property.

This information is also necessary to assess whether any otherwise discoverable information is "proportional to the needs of the case," under Rule 26.

        b)    <u>Defendants' Position</u>

All plaintiffs in every case want immediate access to financial information. But the assertion that Plaintiff needs that information here is absurd given that (as they admit above) they know how much money was made from the sale of the one NFT that has been sold: at most, a little over one million dollars. (The remaining six NFTs are not presently being sold.) If Plaintiff wants to engage in litigation and to occupy this Court's time knowing that the total amount at issue is at that order of magnitude it can do so – but there is no need for expedited discovery for Plaintiff to understand the value of its case because (merits aside) the total corpus of the amount that could potentially be at issue is known.

Furthermore, Defendants have already agreed to produce the final agreements relating to the NFTs. When those agreements are produced, Plaintiff will have all the financial information it reasonably needs relating to the NFTs.

Defendants don't require any special discovery. They are instead content to rely on the Federal Rules of Civil Procedure.

2.    <u>Structure of Protective Order</u>

        a)    <u>Plaintiff's Position</u>

The parties disagree over whether an Attorneys' Eyes Only designation is required in the protective order for this matter. Miramax agrees that the parties all have sensitive information that should be designated as "CONFIDENTIAL," and

restricted (with respect to the parties themselves) to identified individuals who have reviewed the protective order and signed an "Acknowledgement and Agreement to Be Bound." Miramax does not believe there is any need for an additional tier, and that adding another layer of confidentiality unnecessarily increases the burden of both sides' counsel communicating about the lawsuit with their respective clients.

The parties are not business competitors, and neither is likely to have discoverable information that is competitively sensitive with respect to the other side. *See Dirickson v. Intuitive Surgical, Inc.*, 2021 WL 4730916, at *4 (C.D. Cal. Sept. 7, 2021) (Rosenbluth, Mag. J.) (stating that attorneys' eyes only designations "are generally appropriate only in cases involving trade secrets"), *report and recommendation adopted*, 2021 WL 5083440 (C.D. Cal. Nov 2, 2021) (Olguin, J.). By way of example, Mr. Tarantino would not suffer any tangible harm if Miramax's CEO—bound by a protective order—were to the see the content associated with the Pulp Fiction NFTs. To the extent there is bona fide, trade secret, *technical* information relating to the NFTs themselves, Miramax is amenable to a special designation governing those materials. Finally, Defendants' suggestion that the parties could ever be direct competitors in selling NFTs wrongly assumes that Defendants have the rights to sell NFTs relating to *Pulp Fiction* or other Miramax films.

Defendants' suggestion that Plaintiff can move to de-designate any documents it believes are improperly designated AEO is impractical and potentially a waste of judicial resources. Under Defendants' proposal, de-designation could take weeks or even months to resolve, as it would require involving Judge Chooljian under Local Rule 37-1 unless the other side voluntarily agrees to de-designate.

   b) <u>Defendants' Position</u>

While Tarantino and Miramax are not competitors, Tarantino does have information which is commercially sensitive vis-a-vis Miramax and which should

be protected by an AEO tier in the protective order.  Defendants are in the position of selling content, whereas Miramax buys content; Miramax should not be able to access commercially sensitive information that would potentially benefit Miramax, such as information about intellectual property value, pricing strategy, and similar factors. Courts routinely issue protective orders permitting AEO designations in order to protect information that might cause competitive harm to the designating party. *See, e.g.*, *Star Fabrics, Inc. v. Ross Stores, Inc.*, No. 217CV03971RGKSKX, 2018 WL 839871, at *2 (C.D. Cal. Feb. 12, 2018); *Chipotle Mexican Grill, Inc. v. Atl. Nat. Foods, LLC.*, No. 820CV01568JVSADS, 2020 WL 6701451, at *1 (C.D. Cal. Nov. 13, 2020).

In addition, there are third parties to this litigation who have significant, sensitive technical information that should be protected with an AEO tier in the protective order.  Indeed, in its sections above, Plaintiff is already threatening to add those parties to this case.  *See, e.g.*, *Star Fabrics, Inc.*, 2018 WL 839871, at *2; *Chipotle Mexican Grill, Inc.*, 2020 WL 6701451, at *1.  And insofar as Miramax intends, for example, to market and sell its own NFTs (which is the clear implication of this lawsuit) they *are* or *will be* in direct competition with those parties as well as Defendants and therefore cannot properly get access to that competitively sensitive information. The bottom line is that, if Miramax thinks that some particular piece of information shouldn't be designated AEO it can move to de-designate that information.  But deciding *in advance* that Defendants will have no right or ability to prevent competitive decisionmakers within Miramax from seeing commercially and technically sensitive information makes no sense and amounts to a *mass* de-designation of information in the dark – particularly given that discovery has just begun and Defendants cannot predict what highly sensitive information Plaintiff might seek in this case.

<u>Statement of Authority to File Per Civil L.R. 5-4.3.4(a)(2)(i)</u>: I attest that all signatories on this document and on whose behalf the filing is submitted concur in the filing's content and have authorized the filing of this document.

| | |
|---|---|
| Dated: February 10, 2022 | PROSKAUER ROSE LLP<br>BART H. WILLIAMS<br>KYLE A. CASAZZA<br>SETH H. VICTOR<br>ALYSON C. TOCICKI |
| JEFFREY D. NEUBURGER<br>(admitted *pro hac vice*)<br>WAI L. CHOY<br>(admitted *pro hac vice*) | By: <u>　　　*/s/ Bart H. Williams*　　</u><br>　　　　　Bart H. Williams<br><br>Attorneys for Plaintiff,<br>MIRAMAX, LLC |
| Dated: February 10, 2022 | FREEDMAN + TAITELMAN, LLP<br>BRYAN J. FREEDMAN<br>JESSE A. KAPLAN<br>THERESA TROUPSON |
| IRELL & MANELLA, LLP<br>DAVID NIMMER<br>DENNIS COURTNEY | By: <u>　　　*/s/ Bryan J. Freedman*　</u><br>　　　　　Bryan J. Freedman<br><br>Attorneys for Defendants,<br>QUENTIN TARANTINO AND VISIONA ROMANTICA, INC. |