| | |
|---|---|
| BART H. WILLIAMS (SBN 134009)<br>bwilliams@proskauer.com<br>KYLE A. CASAZZA (SBN 254061)<br>kcasazza@proskauer.com<br>SETH H. VICTOR (SBN 329341)<br>svictor@proskauer.com<br>ALYSON C. TOCICKI (SBN 336179)<br>atocicki@proskauer.com<br>PROSKAUER ROSE LLP<br>2029 Century Park East, Suite 2400<br>Los Angeles, CA  90067-3010<br>Telephone:     (310) 284-4520<br>Facsimile:     (310) 557-2193 | FREEDMAN + TAITELMAN, LLP<br>Bryan J. Freedman, Esq. (SBN: 151990)<br>bfreedman@ftllp.com<br>Jesse A. Kaplan, Esq. (SBN: 255059)<br>jkaplan@ftllp.com<br>Theresa Troupson, Esq. (SBN: 301215)<br>ttroupson@ftllp.com<br>1801 Century Park West, 5th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 201-0005<br>Facsimile: (310) 201-0045 |
| JEFFREY D. NEUBURGER (admitted *pro hac vice*)<br>jneuburger@proskauer.com<br>WAI L. CHOY (admitted *pro hac vice*)<br>wchoy@proskauer.com<br>PROSKAUER ROSE LLP<br>Eleven Times Square<br>New York, NY 10036<br>Telephone:     (212) 969-3000<br>Facsimile:     (212) 969-2900 | IRELL & MANELLA, LLP<br>David Nimmer, Esq. (SBN: 97170)<br>dnimmer@irell.com<br>Dennis J. Courtney, Esq. (SBN: 307646)<br>dcourtney@irell.com<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Telephone: (310) 203-7079<br>Facsimile: (310) 203-199 |
| Attorneys for Plaintiff,<br>MIRAMAX, LLC | Attorneys for Defendants,<br>QUENTIN TARANTINO and VISIONA ROMANTICA, INC. |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRAMAX, LLC,<br><br>                   Plaintiff,<br><br>     vs.<br><br>QUENTIN TARANTINO; VISIONA ROMANTICA, INC.; and DOES 1–50,<br><br>                   Defendants. | Case No. 2:21-cv-08979 FMO (JCx)<br><br>**DISCOVERY MATTER: JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date: April 12, 2022<br>Time: 9:30 a.m.<br>Place: Courtroom 705, 7th Floor<br>Judge: Hon. Jacqueline Chooljian<br><br>Discovery Cut-Off: August 17, 2022<br>Pretrial Conference: February 10, 2023<br>Trial:  February 28, 2023<br><br>[*Scheduling and Case Management Order is attached as Exhibit A*] |

# **TABLE OF CONTENTS**

**Page**

PLAINTIFF'S INTRODUCTORY STATEMENT ................................................... 1

DEFENDANTS' INTRODUCTORY STATEMENT ............................................... 3

REQUESTS FOR PRODUCTION OF DOCUMENTS AT ISSUE ........................ 5

    REQUEST NO. 13: ............................................................................................ 5

        RESPONSE TO REQUEST NO. 13: ........................................................... 5

            Plaintiff's Position: ................................................................................. 6

            Defendants' Position: ............................................................................. 8

    REQUEST NO. 24: .......................................................................................... 10

        RESPONSE TO REQUEST NO. 24: ......................................................... 11

            Plaintiff's Position: ............................................................................... 11

            Defendants' Position: ........................................................................... 12

PLAINTIFF'S CONCLUSION ............................................................................... 13

DEFENDANTS' CONCLUSION ........................................................................... 13

E-FILING ATTESTATION .................................................................................... 15

# JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM DEFENDANTS

Pursuant to Local Rule 37-2, Plaintiff Miramax, LLC ("Plaintiff" or "Miramax") and Defendants Quentin Tarantino and Visiona Romantica, Inc. ("Defendants," and together with Miramax, the "Parties") submit this joint stipulation (the "Joint Stipulation") relating to Miramax's motion to compel production of documents from Defendants. Following the conference of counsel conducted on March 4, 2022, the Parties to this action were unable to reach agreement with respect to these outstanding discovery disputes. The Parties have outlined the requests at issue, the insufficient responses, and their respective positions for the Court's consideration below.

## PLAINTIFF'S INTRODUCTORY STATEMENT

As of March 11, 2022, Defendants have yet to produce a single document in this litigation. Miramax seeks the production of documents responsive to Plaintiff's Requests for Production of Documents (Set One), served on Defendants on December 16, 2021—nearly three months ago. Defendants' intentional and deliberate delay in delivering any documents whatsoever has prevented Miramax from learning basic background facts, while Defendants' and others' conduct has left Miramax and everyone else guessing about what is really going on with Quentin Tarantino's once-hyped sale of *Pulp Fiction* NFTs. *See, e.g.*, Matthew Belloni, *Tarantino's 'Pulp Fiction' NFTs Need a Full Syringe of Adrenaline*, Puck, Feb. 22, 2022, *at* https://puck.news/tarantinos-pulp-fiction-nfts-need-a-shot-of-adrenaline/.

Most notably, without this information, Plaintiff does not know:

- Whether Defendants are planning any future sales of *Pulp Fiction* NFTs and, if so, when those sales would take place; and
- How much money or other compensation Defendants either have received or stand to receive in connection with sales of *Pulp Fiction* NFTs.

Defendants have stonewalled Plaintiff at every opportunity. In their original objections and responses to Plaintiff's document requests, Defendants refused to agree

to produce any documents responsive to 11 of Plaintiff's 37 requests. After just a single letter and meet-and-confer, Defendants backed off on their refusals for more than half of those requests and agreed to supplement their responses and produce non-privileged responsive documents, leaving only 5 requests at issue here. While the parties continue negotiations on 3 of those 5, facing the threat of a court filing, Defendants now refuse to agree to produce documents in response to only 2 requests. As explained below, each is directly relevant to the action. Still, while the parties address these requests, Plaintiff still has not provided any documents relating to all other requests.

The Ninth Circuit Court of Appeals has made abundantly clear that the "liberal discovery principles of the Federal Rules" require the party resisting discovery "to carry a heavy burden of showing why discovery was denied." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *see also Deckers Outdoor Corp. v. Romeo*, 2012 WL 13006018, at *1 (C.D. Cal. Feb. 13, 2012) (Olguin, J.) ("The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.") (citing *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009)). In turn, courts throughout the Central District of California have routinely recognized that boilerplate objections in response to discovery requests, including "vague and ambiguous," "not relevant," and "burdensome and oppressive" are improper, especially when a party fails to submit any evidentiary declaration supporting such objections. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (citing *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996)). For the remaining requests at issue, Defendants rely on their own iterations of improper boilerplate objections as grounds for refusing to produce certain categories of documents that bear directly on the key issues in this litigation and fail to articulate any valid grounds for their drawn out refusal to produce relevant documents. The Court should therefore compel the production of documents as outlined by Plaintiff below.

## DEFENDANTS' INTRODUCTORY STATEMENT

Twenty-eight years ago, defendant Quentin Tarantino wrote his *Pulp Fiction* screenplay (the "Screenplay"). In 1993, Tarantino entered into an agreement (the "Original Rights Agreement") with Miramax Film Corp. ("Miramax Corp")[1] concerning the film *Pulp Fiction*. Pursuant to the Original Rights Agreement and several other 1993 agreements and instruments, Tarantino reserved various rights related to *Pulp Fiction*, in particular his unambiguous right to publish his Screenplay. Specifically, pursuant to Section 2 of the Original Rights Agreement, Tarantino reserved the following rights:

> soundtrack album, music publishing, live performance, **print publication** (including without limitation **screenplay publication**, "making of" books, comic books and novelization, **in audio and electronic formats as well**, as applicable), interactive media, theatrical and television sequel and remake rights, and television series and spinoff rights. Exercise of certain of the Reserved Rights is subject to restrictions set forth elsewhere in this agreement. Tarantino shall have the right to use the title of the Film in connection with the exploitation of the Reserved Rights.

(Emphasis added).

In the fall of 2021, Tarantino decided that portions of his original handwritten Screenplay would be published through non-fungible tokens ("NFTs"). While NFTs might seem complicated, in reality they are relatively simple. An NFT simply allows someone to securely view content, in this case scanned copies of portions of Tarantino's original Screenplay. After it was announced in November 2021 that the Screenplay NFTs would be available for sale, Miramax immediately filed this lawsuit. Miramax alleges that Tarantino's retained contractual right to publish his Screenplay somehow excludes the Screenplay NFTs.

Since inception of this lawsuit, Miramax's strategy has been clear – to employ scorched-earth litigation tactics to overwhelm and bully Tarantino into submission. To that end, Miramax has gone out of its way to make this litigation as painful and cost-

---

[1] Plaintiff Miramax alleges that it has acquired Miramax Corp's rights.

prohibitive as possible for not only Tarantino, but all of his representatives, including his transactional attorneys, his talent agency and managers.

After Tarantino's attorney immediately agreed to accept service of the Complaint on Tarantino's behalf, Tarantino requested that Miramax agree to a brief extension for Defendants to respond to the Complaint. Declaration of Jesse A. Kaplan ("Kaplan Decl."), Ex. 1 (email from Defendants' counsel). Miramax's counsel refused, claiming "Consistent with the Central District's Civility and Professionalism Guidelines on scheduling, we are unable to grant your unexplained request for a 30-day extension because here, 'time is of the essence'" and that Miramax "would be prejudiced in the event the litigation were paused for 30 days." Kaplan Decl., Ex. 2 (email from Plaintiff's counsel). In mid-January 2022, Tarantino requested that Miramax grant Defendants an extension to respond to two sets of Requests for Production. Kaplan Decl., Ex. 3 (email from Defendants' counsel). Again, Miramax's counsel refused, disingenuously claiming that it could not grant an extension without "prejudicing our client's rights." Kaplan Decl., Ex. 4 (email from Plaintiff's counsel). Since then, Tarantino and his representatives have searched for and produced documents[2] concerning the NFT transaction at issue and the 1993 Original Rights Agreement transaction. Apparently, that is not good enough for Miramax.

Now, Miramax seeks to burden not only Tarantino, but all of his representatives by forcing them to search through 28 years of records to locate all documents and communications "concerning" any agreements or draft agreements "involving"

---

[2] Despite Plaintiff's insinuations of bad faith, Defendants have conducted themselves in good faith throughout this proceeding. Defendants met and conferred in good faith, agreeing to supplement nearly all of their disputed responses to Plaintiff's Requests for Production and doing so promptly. *See* Kaplan Decl., Ex. 5 (letter from Plaintiff's counsel identifying disputed discovery responses); Kaplan Decl, ¶¶ 8-9. Bizarrely, Plaintiff seems to suggest that Defendants' willingness to reach an agreement on disputed discovery matters evidences bad faith. Furthermore, Defendants collected documents not only from their own files, but also from multiple third parties, and produced them less than a week after the Court entered the Protective Order on March 10, 2022. Kaplan Decl., ¶ 10.

Tarantino's reserved rights, no matter what those communications pertain to. Even worse, Miramax has demanded that Tarantino and his representatives search for any documents or communications that in any way concern any of his *Pulp Fiction* intellectual property rights.

The documents requested by Miramax are neither relevant nor proportional to the needs of this case. Tarantino has clearly and unambiguously told Miramax why he has the right to publish his Screenplay via NFTs. To the extent Miramax is looking to see if Tarantino has taken an inconsistent position as to his rights concerning NFTs, the requests in dispute, which are grossly overbroad to say the least, will not locate the proverbial needle in a haystack, and will not yield any documents specific to NFTs.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AT ISSUE

**REQUEST NO. 13:**

All DOCUMENTS and COMMUNICATIONS CONCERNING any final or draft agreements and draft provisions between YOU and any third parties involving YOUR RESERVED RIGHTS under the ORIGINAL RIGHTS AGREEMENT.

**RESPONSE TO REQUEST NO. 13:**

Responding Party incorporates his general objections as if set forth fully herein. Responding Party further objects to this request as it is not proportional to the needs of this action, is overbroad, seeks documents unrelated to the dispute at issue, seeks documents that are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence relevant to any claim at issue in this action, and is unduly burdensome. Specifically, the request seeks documents and communications relating to Responding Party's reserved rights without limitation as to the subject matter, time or purpose of those documents or communications. In essence, Plaintiff is broadly requesting all documents concerning Mr. Tarantino's licensing of his rights to anyone, at any time and for any purpose irrespective of whether such licensing or usage pertains to the NFTs in question. Moreover, Defendants have agreed to produce the actual agreement(s) concerning the

NFTs is dispute. Responding Party further objects on the grounds that the request is vague, ambiguous, and impermissibly compound. Responding Party further objects to the request to the extent that it seeks documents and information that constitute proprietary and/or confidential business information and/or trade secrets of Responding Party and/or third parties. Responding Party further objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, the common interest privilege, the joint defense privilege or any other applicable privilege or doctrine.

**PLAINTIFF'S POSITION:**

Defendants announced the planned sale of *Pulp Fiction* NFTs in November 2021 without having ever consulted Miramax. Defendants contend that they have the unilateral right to sell these particular NFTs because of Mr. Tarantino's "Reserved Rights" under the 1993 Original Rights Agreement, particularly the right to "screenplay publication." Miramax strongly disagrees that the *Pulp Fiction* NFTs fall within the scope of Mr. Tarantino's "Reserved Rights" as the parties understood them at the time they entered into the Original Rights Agreement. This Request goes directly to that disputed issue by requesting documents that should evidence (1) whether there have been any previous agreements involving any of Mr. Tarantino's "Reserved Rights," and (2) what Defendants understood those "Reserved Rights" to encompass in negotiating any such agreements.

There should be no dispute that Miramax is entitled to know how Defendants have interpreted, and subsequently exploited, the limited set of "Reserved Rights" in the Original Rights Agreement. In fact, "[i]t is a time-honored principle that the conduct of the parties is given great weight in the interpretation of a contract." *See Travelers Prop. Cas. Co. of Am v. Workers' Comp. Appeals Bd.*, 40 Cal. App. 5th 728, 739 (2019) (citing *Crestview Cemetary Ass'n v. Dieden*, 54 Cal. 2d 744, 752 (1960) ("Words are frequently but an imperfect medium to convey thought and intention. When the parties to a contract perform under it and demonstrate by their conduct that they knew what

they were talking about the courts should enforce that intent.")). Because Defendants have pointed to certain rights as granting them the requisite authority to mint and/or sell the NFTs at issue, in the spirit of compromise, Miramax originally offered to limit this Request to non-privileged, responsive documents involving only the specific "Reserved Rights" on which Defendants are relying in connection with the NFTs at issue. Miramax also offered a further compromise during the meet-and-confer process, proposing to limit this Request to non-privileged, responsive documents involving only the right to "screenplay publication."

Defendants have been unwilling to compromise. Instead, Defendants assert boilerplate objections, arguing that the Request is overbroad, not proportional to the needs of the case, and unduly burdensome. However, despite its best efforts in discussions with Defendants' counsel, Miramax remains in the dark as to how many agreements exploiting the "Reserved Rights" even exist (assuming any do at all), and is therefore unable to assess the breadth, proportionality, or burden associated with the Request. And, in any event, Miramax made several good faith attempts to narrow the Request by limiting the scope (as detailed above) and proposing further discussion of the Request after receiving clarification from Defendants as to how many agreements exploiting the "Reserved Rights" exist (which Defendants quickly declined without explanation). Defendants also contend the Request is vague and ambiguous, however, Defendants' counsel had no issue interpreting the Request as covering all final and draft agreements related to the exploitation of Tarantino's "Reserved Rights" under the Original Rights Agreement while meeting and conferring with Plaintiff's counsel on the issue.

The Court should order Defendants to produce any documents withheld on the basis of the above boilerplate objections.

**DEFENDANTS' POSITION:**

Miramax contends that Tarantino, his employee, transactional attorneys, talent agents, managers and representatives[3] must search through 28 years of records to locate and identify every scrap of paper, including communications, that in any way "concerns"[4] any actual or draft agreement "involving" any of Tarantino's reserved rights. This request was not limited by subject matter or time. This request was not even limited to pre-contract formation documents. Even if this request was limited to Tarantino's screenplay publication rights, Tarantino and his representatives would still be required to search for communications that in any way "concerned" any publishing deals for the life of those deals, irrespective of subject matter. This would include documents and communications concerning the parties' administration of and performance under those agreements post-formation.

Miramax does little to try to justify this request. Miramax concludes that the requested documents would evidence how Tarantino interpreted and understood his reserved rights. Miramax, however, fails to articulate what interpretation it believes these documents might even reflect. At most, Miramax suggests that these documents might show that Tarantino has acted inconsistently with his recent publication of his Screenplay through NFTs.

Miramax is wrong. Documents and communications spanning 28 years that in any way "concern" Tarantino's screenplay publication deals are irrelevant. At a minimum, this request is woefully overbroad and not proportional to the needs of the

---

[3] Miramax has demanded that Tarantino cause his attorneys, agents and managers to undertake such a search since their documents would purportedly be under his control. In Miramax's February 23, 2022 meet and confer letter, Miramax asked Tarantino to confirm that the search included "Defendants' representatives, including agents, managers, and others who may have responsive documents." Kaplan Decl., Ex. 5.

[4] "Concerns" is broadly defined as follows: "'CONCERNING' and 'RELATING TO' shall be construed in **the broadest possible sense** to mean referring to, regarding, pertaining to, showing, containing, identifying, monitoring, constituting, reflecting, in connection with, evidencing, embodying, stating, dealing with, commenting on, analyzing, describing, discussing, mentioning, citing, summarizing, or bearing any logical or factual connection with the matter discussed." (Emphasis added).

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

case as these publication deals have little to no importance to interpreting the language in the 1993 Original Agreement and determining whether Tarantino's reserved screenplay publication rights exclude screenplay publication through NFTs. Tarantino's prior publication deals do not discuss NFTs, the subject matter of this dispute. Additionally, as Tarantino's prior publication deals involved the grant of publication rights, it is unclear how they could be inconsistent with his publication of his Screenplay through NFTs. These documents would only reflect that Tarantino believed that he had rights to publish his Screenplay. Only documents reflecting what rights Tarantino did **not** have would potentially be relevant.

    Relevance is still the cornerstone of discovery. *See* Fed. R. Civ. P. 26(b)(1). Moreover, relevant discovery must be proportional to the needs of the case. *See id.* Among other things, the Court may consider the importance of the discovery in resolving issues and the burden of complying with the discovery. *See id.* Assuming documents reflecting Tarantino's interpretation of the Original Rights Agreement are discoverable, only the application of the reserved screenplay publication rights to a discretely similar scenario – publication through NFTs – could possibly be relevant. *See Ivy Hotel San Diego, LLC v. Houston Cas. Co.*, No. 10CV2183-L (BGS), 2011 WL 13240367, at \*6 (S.D. Cal. Oct. 20, 2011). For example, in the insurance coverage context, courts refuse or limit discovery seeking the application of policy exclusions to claims that are not similar to that which is in dispute. *See Ivy Hotel San Diego*, 2011 WL 13240367, at \*6 ("Even taking into consideration Ivy Hotel's concession to limit its request to pleadings and discovery-related information from lawsuits and arbitrations, the request remains overly broad. **Only information regarding HCC application of the same policy language to similar claims by other insureds would be relevant** to HCC's intent and interpretation of the Policy.") (Emphasis added); *Polygon Nw. Co., LLC v. Steadfast Ins. Co.*, No. C08-1294RSL, 2009 WL 1437565, at \*2 (W.D. Wash. May 22, 2009) (limiting discovery to the same third-party claimant asserting similar construction defect claims). Moreover, such documents would only

be relevant if they evidenced that Tarantino acted in an inconsistent manner. *See Polygon*, 2009 WL 1437565, at *2. In other words, the documents would need to reflect that Tarantino said or did something to evidence that the reserved screenplay publication rights did **not** permit him to exploit the Screenplay through NFTs.

Here, the requested publishing agreements were all traditional publishing deals **granting** rights to publish the screenplay in book format, and in one instance, the right to publish the screenplay in book and electronic formats. None of these agreements mention NFTs. Moreover, this is not analogous to an insurance coverage dispute where an insurance carrier previously extended coverage for a similar claim, but now seeks to deny coverage. It is the opposite. These publishing agreements simply reflect that Tarantino believed that he at least had the right to publish his screenplay in book or electronic format. Accordingly, how could these transactions reflect that Tarantino believed that he did **not** have the right to publish the Screenplay using NFTs?

At a minimum, this request would need to be limited significantly to specific negotiations, if any, concerning NFTs. Why should Tarantino and all of his representatives (including his transactional attorneys, talent agency, managers and employee) be forced to search through 28 years of documents and produce communications occurring after the agreements were entered into about, among other things, performance under the agreement, that have nothing to do with NFTs? Post-contract formation communications cannot possibly be relevant. Moreover, pre-contract formation documents could only be relevant if they happened to discuss the application of the reserved rights to NFTs, and indicated that Tarantino did not have such rights.

**REQUEST NO. 24:**

All DOCUMENTS and COMMUNICATIONS CONCERNING any copyrights, trademarks, or other intellectual property rights that YOU contend YOU have CONCERNING *Pulp Fiction*.

**RESPONSE TO REQUEST NO. 24:**

Responding Party incorporates his general objections as if set forth fully herein. Responding Party further objects to this request as it is not proportional to the needs of this action, is overbroad, seeks documents unrelated to the dispute at issue, seeks documents that are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence relevant to any claim at issue in this action, and is unduly burdensome. For example, and without limitation, the request seeks documents and communications concerning all intellectual property rights Responding Party has concerning *Pulp Fiction* without regard to whether those intellectual property rights are disputed or relevant to this litigation. The rights in dispute and discrete and are based on certain documents that Plaintiff already has and Defendants have agreed to produce. Responding Party further objects on the grounds that the request is vague, ambiguous, and impermissibly compound. Responding Party further objects to the request to the extent that it seeks documents and information that constitute proprietary and/or confidential business information and/or trade secrets of Responding Party and/or third parties. Responding Party further objects to this request to the extent that it seeks documents protected by the attorney-client privilege, work product doctrine, the common interest privilege, the joint defense privilege or any other applicable privilege or doctrine.

**PLAINTIFF'S POSITION:**

Miramax's claims in this case primarily relate to its intellectual property rights in the 1994 motion picture *Pulp Fiction*. *See* Complaint, Ex. B, ECF No. 1. More specifically, Miramax, as the exclusive owner of rights under copyright in and to *Pulp Fiction*, and all elements thereof in all stages of development and production, alleges that Defendants' conduct as alleged in the Complaint infringes upon those rights. *Id.* Miramax similarly alleges that Defendants have infringed upon Plaintiff's trademark rights in and to *Pulp Fiction*. *Id.*

1  Defendants deny these allegations, and claim that they have all of the intellectual
2  property rights needed to mint and/or sell the *Pulp Fiction* NFTs. It follows that
3  Miramax is entitled to know the extent of any intellectual property rights Defendants
4  contend they have concerning *Pulp Fiction*, and see the documents (including
5  agreements and drafts thereof) relating to those rights. Defendants' boilerplate
6  objections should be overruled. As with Request No. 13, Miramax is unable to assess
7  the breadth, proportionality, or burden associated with the Request. And also as with
8  Request No. 13, despite Defendants' objections as to vagueness and ambiguity,
9  Defendants' counsel had no issue interpreting the Request while meeting and conferring
10 with Miramax's counsel on the issue.

11 The Court should order Defendants to produce any documents withheld on the
12 basis of the above boilerplate objections.

13 **DEFENDANTS' POSITION:**

14 Miramax contends that Tarantino, his employee, attorneys, talent agents,
15 managers and representatives must search through 28 years of records to locate all
16 documents, including communications, that in any way "concern" any of his intellectual
17 property rights "concerning" *Pulp Fiction*. This request is nothing short of harassment.

18 Miramax argues that it is entitled to know what intellectual property rights
19 Tarantino contends he has concerning *Pulp Fiction*, and that it should be permitted to
20 see the documents (including agreements and drafts thereof) relating to those rights.
21 Tarantino, however, has clearly and consistently told Miramax the basis for publishing
22 his Screenplay through NFTs – his reserved rights to publish his Screenplay. These
23 rights are based on the 1993 Original Rights Agreement and other agreements and
24 instruments from 1993. Indeed, Miramax ignores that that Tarantino does not dispute
25 that his rights to *Pulp Fiction* are governed by the 1993 Original Rights Agreement and
26 other agreements and instruments from that timeframe. Tarantino has admitted this
27 much in his Answer. (*See* ECF 7 [Answer, ¶¶ 20-24]). Moreover, Miramax ignores
28 that Tarantino has agreed to produce and has produced all of the non-privileged

underlying documents from the negotiation of the 1993 Original Rights Agreement transaction.[5] As stated in Tarantino's objections to this Request, "The rights in dispute [are] discrete and are based on certain documents that Plaintiff already has and Defendants have agreed to produce."

What else does Miramax need to know?  Certainly, Miramax does not need every scrap of paper spanning almost three decades that concern any and all intellectual property rights that Tarantino retained.

## PLAINTIFF'S CONCLUSION

The Federal Rules of Civil Procedure create discovery procedures precisely so the parties can test and verify each other's contentions.  Defendants contend in this lawsuit that Mr. Tarantino's "Reserved Rights" under the Original Rights Agreement encompass the necessary rights to mint and/or sell *Pulp Fiction* NFTs.  Yet Defendants refuse to produce documents created prior to this dispute, that undoubtedly reflect their own understanding of their limited rights to *Pulp Fiction*.  If Defendants' understanding of their rights has been consistent throughout, there should be nothing to hide, and there should not be so many other deals involving Mr. Tarantino's limited "Reserved Rights" that there is any undue burden.  Defendants should be ordered to produce all non-privileged documents responsive to Requests No. 13 and 24.

## DEFENDANTS' CONCLUSION

For the reasons discussed in this Joint Stipulation, Miramax's Motion to Compel non-privileged documents responsive to Requests 13 and 24 should be denied.

---

[5] Tarantino agreed to produce "non-privileged documents" responsive to Request No. 11: "All DOCUMENTS and COMMUNICATIONS CONCERNING the ORIGINAL RIGHTS AGREEMENT, including any DOCUMENTS that YOU contend are relevant in any way to interpretation of the ORIGINAL RIGHTS AGREEMENT." Kaplan Decl., ¶¶ 8-9.


| | |
|---|---|
| Dated:  March 21, 2022 | PROSKAUER ROSE LLP<br>BART H. WILLIAMS<br>KYLE A. CASAZZA<br>SETH H. VICTOR<br>ALYSON C. TOCICKI |
| JEFFREY D. NEUBURGER<br>(admitted *pro hac vice*)<br>WAI L. CHOY<br>(admitted *pro hac vice*) | |
| | By: _____/s/ Bart H. Williams_____<br>        Bart H. Williams |
| | Attorneys for Plaintiff,<br>MIRAMAX, LLC |
| Dated:  March 21, 2022 | FREEDMAN + TAITELMAN, LLP<br>BRYAN J. FREEDMAN<br>JESSE A. KAPLAN<br>THERESA TROUPSON |
| | By: _____/s/  Bryan. J. Freedman_____<br>         Bryan. J. Freedman |
| | IRELL & MANELLA, LLP<br>DAVID NIMMER<br>DENNIS COURTNEY |
| | Attorneys for Defendants<br>Quentin Tarantino and Visiona Romantica, Inc. |

# E-FILING ATTESTATION

I, Bart H. Williams, attest pursuant to Local Rule 5-4.3.4(a)(2)(i) that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

                                           /s/ Bart H. Williams
                                           Bart H. Williams