UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-08979-FMO-JC | Date | April 1, 2022 |
|---|---|---|---|
| Title | Miramax, LLC v. Quentin Tarantino, et al. | | |

| Present: The Honorable | Jacqueline Chooljian, United States Magistrate Judge | |
|---|---|---|
| Kerri Hays | none | none |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| none | none |

**Proceedings:**   (In Chambers)

**NOTICE OF TENTATIVE RULING ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (DOCKET NO. 25)**

**I.   SUMMARY**

On March 21, 2022, Plaintiff Miramax, LLC ("Plaintiff" or "Miramax") filed a Motion to Compel Production of Document ("Motion to Compel") which has been noticed for hearing before this Court on April 12, 2022 at 9:30 a.m.[1]  (Docket No. 25).  The Motion to Compel seeks an order compelling Defendants Quentin Tarantino ("Tarantino") and Visiona Romantica, Inc. ("VRI") (collectively "Defendants") to produce non-privileged documents in their possession, custody or control that are responsive to Plaintiff's Request for Production of Documents (Set One) ("RFP(s)" or "Document Request(s)"), Nos. 13 and 24.

Based upon the Court's consideration of the parties' submissions in connection with the Motion to Compel, the Court is tentatively inclined to issue the rulings below.  The parties will be afforded the opportunity to offer any further arguments on the Motion to Compel and to address the tentative ruling at the hearing on this matter.[2]  In the event all parties submit on the tentative ruling (which they may do without prejudice to any appeal to the District Judge) and so notify the Court in writing by not later than 12:00 p.m. on Friday, April 8, 2022, the matter will be submitted, the hearing thereon will be vacated, and the Court will adopt the tentative ruling as its final ruling on the Motion to Compel on the currently scheduled hearing date (April 12, 2022).

---

[1]In connection with the Motion to Compel, the parties concurrently submitted a Joint Stipulation (alternatively, "JS") with exhibits, including a Declaration of Jesse A. Kaplan ("Kaplan Decl.") with exhibits ("Kaplan Ex."). (Docket No. 25).  Plaintiff thereafter filed a Supplemental Memorandum (alternatively, "Supp. Memo") with a Declaration of Kyle A. Casazza ("Casazza Decl.") with exhibits ("Casazza Ex.").  (Docket No. 26).

[2]Absent further order of the Court, the hearing on this matter will be telephonic.  The Clerk will supply counsel with the necessary call-in information prior thereto.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-08979-FMO-JC | Date | April 1, 2022 |
|---|---|---|---|
| Title | Miramax, LLC v. Quentin Tarantino, et al. | | |

**II.    BACKGROUND**

On November 16, 2021, Plaintiff filed a Complaint asserting claims for breach of contract, copyright infringement, trademark infringement, and unfair competition against Defendants Tarantino, VRI, and others. (Docket No. 1). On December 9, 2021, Defendants Tarantino and VRI filed an Answer. (Docket No. 17).

On February 10, 2022, the parties filed a Joint Rule 26(f) Report containing Plaintiff's Statement of the Case ("Plaintiff's Statement") and Defendants' Statement of the Case ("Defendants' Statement"). (Docket No. 20).

Plaintiff's Statement reflects the following: This case is about non-fungible tokens ("NFTs") related to the motion picture Pulp Fiction (the "Pulp Fiction NFTs"). In 1993 and 1994, Miramax, Tarantino and VRI entered into a series of agreements governing their respective rights in and to Pulp Fiction. Miramax alleges that the agreements granted to Miramax all rights in and to the motion picture, including the right to distribute it in all media now or hereafter known, and excluding only a set of limited "Reserved Rights" retained by Tarantino. Miramax asserts that the development, marketing, and sale of the Pulp Fiction NFTs infringes its rights under those agreements. Tarantino and VRI deny the allegations and assert that Tarantino's limited "Reserved Rights" under the agreements encompass the necessary rights to develop, market, and sell the Pulp Fiction NFTs.[3] Tarantino and VRI are selling the Pulp Fiction NFTs in collaboration with non-parties Secret Labs and Guy Zyskind. On January 24,

---

[3]Plaintiff's Statement further reflects:

Miramax's breach of contract claim asserts that the parties' Original Rights Agreement (as defined in the Complaint [see Complaint Ex. A]) and the subsequent Tarantino-Miramax Assignment (as defined in the Complaint [see Complaint Ex. E]) granted and assigned to Miramax all rights in and to Pulp Fiction, including the right to distribute Pulp Fiction "in all media now or hereafter known," except for a limited set of Tarantino's Reserved Rights. Defendants assert that the limited Reserved Rights include the right to develop, market, and sell the Pulp Fiction NFTs.

Miramax's copyright infringement claim asserts that Defendants' development, marketing, and sale of the Pulp Fiction NFTs willfully infringes on Miramax's exclusive rights in Pulp Fiction.

Miramax's trademark infringement claim asserts that Miramax owns a registered trademark in Pulp Fiction (the "Pulp Fiction Mark"), and Defendants' use of the Pulp Fiction Mark is unauthorized and thus infringes on Miramax's trademark and is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of the Pulp Fiction NFTs.

Miramax's unfair competition claim asserts that Defendants' use of the Pulp Fiction mark is unauthorized and is likely to cause consumers to incorrectly believe that the Pulp Fiction NFTs are sold, authorized, endorsed, or sponsored by Miramax.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-08979-FMO-JC | Date | April 1, 2022 |
|---|---|---|---|
| Title | Miramax, LLC v. Quentin Tarantino, et al. | | |

2022, Secret Labs announced that the first of seven Pulp Fiction NFTs had sold for $1.1 million. The remaining six Pulp Fiction NFTs were scheduled to be sold during that same week, but the auctions were postponed indefinitely, with Secret Labs citing "extreme market volatility."

Defendants' Statement of the Case reflects the following:  This case is about NFTs which provide access to digital copies of portions of the original, hand-annotated screenplay for Pulp Fiction (the "Screenplay NFTs").  In 1993 and 1994, Miramax Film Corp.[4] and Defendant Tarantino entered into a series of agreements whereby Tarantino granted Plaintiff certain limited rights in Pulp Fiction-related intellectual property.  Miramax alleges that the development, marketing, and sale of the Screenplay NFTs infringes its rights under those agreements.  Tarantino and VRI deny the allegations as Tarantino has always reserved all print publishing rights in his screenplay (including in electronic form) and may therefore develop, market, and sell the Screenplay NFTs.  By and through his agreements with Miramax Film Corp., Tarantino provided Miramax Film Corp. only with certain limited rights; that he reserved to himself all publishing rights in his screenplay; that he has published the screenplay for years without complaint from Miramax; and that he has the right to publish digital copies of his screenplay using and through the sale and distribution of NFTs.  He further asserts that the name of the screenplay is and always has been "Pulp Fiction," that he has marketed and sold the screenplay under that name for many years, and that his use of that name does not, in any way, violate any trademark rights owned by Plaintiff.

On December 16, 2021, Plaintiff served Defendants with Plaintiff's Document Requests.  (JS at 1 [internal pagination]; Kaplan Ex. 3; Supp. Memo at 3 [internal pagination]).[5]  On January 16, 2021, Defendants apparently served responses to Plaintiff's Document Requests.[6]  The parties met and conferred regarding certain discovery disputes between February 23, 2022 and March 4, 2022.  (Kaplan Decl. ¶¶ 6, 7; Kaplan Ex. 5, 4).  The Court entered a Protective Order on March 10, 2022.  (Docket No. 24).  On March 16, 2022, Defendants provided their First Supplemental Responses to the Document Requests and produced documents responsive to the Document Requests.  (Kaplan Decl. ¶¶ 8-10).[7]

---

[4]Miramax alleges that it acquired the rights at issue from Miramax Film Corp. through a series of transactions.  (Complaint at 4, n.1).

[5]The Court uses the internal pagination of referenced documents throughout this order without further notation.

[6]In light of Plaintiff's refusal to grant an extension of the response deadline (Kaplan Decl. ¶¶ 4, 5; Kaplan Exs. 3, 4), email correspondence reflecting that such responses were due on January 16, 2021 (Kaplan Ex. 4), and the absence of any contention that such deadline was not met/that the initial responses were untimely, the Court presumes such initial responses were provided on January 16, 2021.

[7]Defendants have produced at least the following documents in discovery:  (1) a signed agreement between Defendants and the entity known as Secret Labs (also known as Gamma Research

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-08979-FMO-JC | Date | April 1, 2022 |
|---|---|---|---|
| Title | Miramax, LLC v. Quentin Tarantino, et al. | | |

**III.     PERTINENT LAW**

      Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information within the foregoing scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).

      Pursuant to Rule 34, any party may serve on any other party a request for the production or inspection of documents within the scope of Rule 26(b) which are in the responding party's possession, custody or control. Fed. R. Civ. P. 34(a). Documents are deemed to be within a party's possession, custody or control if the party has actual possession, custody or control thereof or the legal right to obtain the property on demand. In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995), cert. dismissed, 517 U.S. 1205 (1996). Accordingly, a party has an obligation to conduct a reasonable inquiry into the factual basis of its responses to discovery, and based on that inquiry, a party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control. A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (citations and internal quotation marks omitted).

      Unless excused by a protective order, in response to a request for the production of documents a party must, within 30 days of service thereof and as to each item or category, either: (1) state that the inspection will be permitted/production will be made; or (2) state with specificity the grounds for objecting to the request, including the reasons, and state whether any responsive materials are being withheld on the basis of that objection. Fed. R. Civ. P. 34(b)(2)(A)-(C). If the responding party states that it will produce documents, such production must be completed no later than the time specified in the request or another reasonable time specified in the response. Fed. R. Civ. P. 34(b)(2)(B).

///
///
///
///
///
///

---

      [7](...continued)
and Development Ltd.), a redacted version of which is in the record (Casazza Decl. ¶ 4; Cassaza Ex. A); (2) emails between Carlos Goodman and Guy Zyskind, redacted versions of which are in the record. (Casazza Decl. ¶¶ 5, 6; Casazza Exs. B, C); and (3) various draft iterations of the Original Rights Agreement, redacted versions of which are in the record (Casazza Decl. ¶ 7; Cassaza Ex. D).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-08979-FMO-JC | Date | April 1, 2022 |
|---|---|---|---|
| Title | Miramax, LLC v. Quentin Tarantino, et al. | | |

**IV. DISCUSSION AND ORDERS**

Plaintiff seeks an order compelling Defendants to produce non-privileged documents in their possession, custody or control that are responsive to RFP Nos. 13 and 24.[8] Defendants oppose, essentially arguing that such Document Requests are overbroad, call for discovery that is not relevant or proportional to the needs of the case, and are unduly burdensome. Defendants suggest that it would particularly be inappropriate to require them to provide documents responsive to such Document Requests since Tarantino has agreed to produce non-privileged documents and communications concerning the Original Rights Agreement, including any documents that he contends are relevant in any way to interpretation of the Original Rights Agreement in response to a Document Request that is not currently in issue (RFP No. 11). (JS at 13, n.5) (citing Kaplan Decl. ¶¶ 8-9 [referencing Defendants' March 16, 2022 provision of their First Supplemental Responses to the Document Requests]). The Court addresses the individual Document Requests in issue below.

**Document Request No. 13**

RFP No. 13 essentially calls for Defendants to produce all documents and communications concerning any final or draft agreements/draft provisions between Defendants and any third parties involving Defendants' Reserved Rights under the Original Rights Agreement. (JS at 5). During the meet and confer process, Plaintiff offered to limit this request to call for non-privileged responsive documents involving only the specific "Reserved Rights" on which Defendants are relying in connection with the NFTs at issue/only the rights to "screenplay publication." (JS at 7). Plaintiff suggests that the documents sought bear on how Defendants have interpreted and subsequently exploited the "Reserved Rights" in the Original Rights Agreement and relatedly Defendants' state of mind as to what is/is not encompassed within the "Reserved Rights," that Defendants' conduct in such regard is relevant to interpretation of the Original Rights Agreement/the "Reserved Rights" provision, and that the discovery sought may undercut Defendants' current position that the "Reserved Rights" encompass the NFTs in issue. (JS at 6-7).

Defendants have objected to this Document Request on multiple bases and apparently declined to produce documents responsive thereto (aside from the actual agreements concerning the NFTs in dispute and communications relative thereto, see supra note 7). (JS at 5-6, 8-10). They essentially argue that this Document Request is overbroad in multiple respects (noting that it would span 28 years of documents/communications and is not even limited to pre-contract formation documents) and calls for irrelevant/minimally relevant information not proportional to the needs of the case (noting that

---

[8]Although such Document Requests appear to contain defined terms, the parties have not supplied the Court with such definitions (except as to the terms "concerns" (JS at 8 n.4)). Similarly, although Defendants incorporate their "general objections" in response to such Document Requests, the parties have not supplied the Court with the substance of such general objections. To the extent the parties anticipate filing any other discovery motions in the future, it would behoove them to attach the actual discovery requests and discovery responses as exhibits thereto.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-08979-FMO-JC | Date | April 1, 2022 |
|---|---|---|---|
| Title | Miramax, LLC v. Quentin Tarantino, et al. | | |

Tarantino's prior publication deals do not discuss NFTs and involved the *affirmative* grant of rights vis-a-vis his screenplay so that they assertedly would shed little if any light on what Defendants viewed to be excluded from the Reserved Rights), and suggests that responding thereto would be unduly burdensome. (JS at 8-10).

The Court largely, but not entirely agrees with Defendants.[9] RFP No. 13 – whether considered as originally written or as narrowed in the manner proposed by Plaintiff – appears to the Court to be overbroad and to call for discovery that is not proportional to the needs of the case considering the factors set out in Rule 26(b)(1). NFTs appear to the Court to be unique in nature and the Court is not persuaded that Defendants' agreements with third parties vis-a-vis the screenplay in issue that do not involve or specifically reference NFTs would shed light on whether Defendants have previously acted in a manner which suggests that they interpret the Reserved Rights to include or exclude NFTs, which is what is at issue here. Having said that, it is not clear to the Court on the current record that the representation made by Defendants in the Joint Stipulation – that Tarantino's prior publication deals do not discuss NFTs (JS at 9) – has been formally made in a discovery response. Nor is it clear to the Court whether Defendants have entered into deals involving what Defendants view to be Reserved Rights that might be characterized as something other than "publication deals" that reference, expressly encompass, or expressly exclude NFTs. To the extent Defendants may have done so, the Court views production of the same to be appropriate.

Accordingly, and because NFTs appear to have only relatively recently become more mainstream, the Court grants in part and denies in part the Motion to Compel as to RFP No. 13 and narrows such Document Request to call for the following: Non-privileged documents generated in the last two years that constitute a final agreement, draft agreement/provisions or pre-contract execution communications regarding the same between Defendants and any third parties involving Defendants' Reserved Rights under the Original Rights Agreement that specifically reference NFTs – whether as being encompassed within or excluded from the Reserved Rights or as rights granted by or excluded from rights granted by Defendants under such final agreement or draft agreement/provisions. Defendants shall produce the documents called for by RFP No. 13, as narrowed, within fourteen days of this Court's final ruling on the Motion to Compel. To the extent Defendants are not in possession, custody or control of any such documents or no such documents exist (other than the documents which Defendants have already produced), Defendants shall provide a supplemental response to RFP No. 13 so indicating by the foregoing deadline.

///

---

[9]For example, contrary to Defendants' suggestion, the Court allows for the possibility that an agreement affirmatively granting rights vis-a-vis Defendants' screenplay may contain a provision expressly specifying what rights are not included within/affirmatively excluded from the scope of rights granted – something which could bear upon Defendants' interpretation of what is/is not encompassed within the Reserved Rights in the Original Rights Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-08979-FMO-JC | Date | April 1, 2022 |
|---|---|---|---|
| Title | Miramax, LLC v. Quentin Tarantino, et al. | | |

**Document Request No. 24**

    RFP No. 24 essentially calls for Defendants to produce all documents and communications concerning any copyrights, trademarks, or other intellectual property rights that Defendants contend they have concerning Pulp Fiction. (JS at 10). Plaintiff argues that because Defendants deny the copyright/trademark infringement allegations in the Complaint and claim to have "all of the intellectual property rights needed to mint and/or sell the Pulp Fiction NFTs," Plaintiff is entitled to know the extent of any intellectual property rights Defendants contend they have concerning Pulp Fiction and to see the documents relating to those rights. (JS at 11-12).

    Defendants have objected to this Document Request on multiple bases and apparently declined to produce documents responsive thereto (aside from those which they have already produced/agreed to produce in response to one or more other Document Requests).[10] (JS at 11, 12-13). They essentially argue that this Document Request is overbroad in multiple respects (noting that it calls for Tarantino, his employee[s], attorneys, talent agents, managers and representatives to search through 28 years of records that in any way "concern" any of his intellectual property rights "concerning" Pulp Fiction),[11] is harassing, and calls for irrelevant/minimally relevant information not proportional to the needs of the case (noting that Tarantino has "clearly and consistently told Miramax the basis for publishing his Screenplay through NFTs – his reserved rights to publish his Screenplay. . . based on the 1993 Original Rights Agreement and other agreements and instruments from 1993."), and suggests that responding thereto would be unduly burdensome. (JS at 11, 12-13).

    Again, for much the same reasons discussed above in connection with RFP No. 13, the Court largely agrees with Defendants and views RFP No. 24 to seek discovery beyond that proportional to the needs of the case considering the factors set out in Rule 26(b)(1). Having said that, it is not clear to the Court whether Defendants specifically claim to have any copyright(s) or any trademarks related to the Pulp Fiction NFTs in issue (as opposed to other unspecified type(s) of intellectual property rights)/the

---

    [10]Defendants represent that they have agreed to produce/produced all non-privileged underlying documents from the negotiation of the 1993 Original Rights Agreement transaction and documents responsive to RFP No. 11, which, as previously noted calls for the production of: "All DOCUMENTS and COMMUNICATIONS CONCERNING the ORIGINAL RIGHTS AGREEMENT, including any DOCUMENTS that [Defendants] contend are relevant in any way to intepretation of the ORIGINAL RIGHTS AGREEMENT." (JS at 12-13 & n.5) (citing Kaplan Decl. ¶¶ 8-9 [referencing Defendants' March 16, 2022 provision of their First Supplemental Responses to the Document Requests]).

    [11]It appears that the term "CONCERNING" has been defined to "be construed in the broadest possible sense to mean referring to, regarding, pertaining to, showing, containing, identifying, monitoring, constituting, reflecting, in connection with, evidencing, embodying, identifying, monitoring, constituting, reflecting, in connection with, evidencing, embodying, stating, dealing with, commenting on, analyzing, describing, discussing, mentioning, citing, summarizing, or bearing any logical or factual connection with the matter discussed." (JS at 8 n.4).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-08979-FMO-JC | Date | April 1, 2022 |
|---|---|---|---|
| Title | Miramax, LLC v. Quentin Tarantino, et al. | | |

source thereof and views that to be an appropriate area of inquiry encompassed by RFP No. 24. Further, although perhaps duplicative of Defendants' representations to date, the Court deems it appropriate to require Defendants also to produce discovery (to the extent not already produced) regarding what intellectual property rights – other than copyrights or trademarks – they have concerning Pulp Fiction NFTs and the source thereof.

      Accordingly, the Court grants in part and denies in part the Motion to Compel as to RFP No. 24 and narrows such Document Request to call for the following: Documents sufficient to reflect (1) what, if any copyrights or trademarks Defendants contend they have concerning Pulp Fiction NFTs, the source thereof, whether such copyrights/trademarks have been registered, and if so, registration numbers; and (2) what, if any other intellectual property rights Defendants contend they have concerning Pulp Fiction NFTs, and the source thereof.[12] Defendants shall produce the documents called for by RFP No. 24, as narrowed, within fourteen days of this Court's final ruling on the Motion to Compel. To the extent Defendants are not in possession, custody or control of one or both categories of documents or no such responsive documents (other than the documents which Defendants have already produced) exist, Defendants shall provide a supplemental response to RFP No. 24 so indicating by the foregoing deadline.

      IT IS SO (TENTATIVELY) ORDERED.

---

[12] Although the Court may not require a party to create documents in response to a document request, Defendants may, if they desire, comply with this order by generating a declaration by a knowledgeable person providing the requisite information.